GREENBERG TRAURIG, LLP
JEFF E. SCOTT (SBN 126308)
*ScottJ@gtlaw.com*
VINCENT H. CHIEFFO (SBN 49069)
*ChieffoV@gtlaw.com*
JORDAN D. GROTZINGER (SBN 190166)
*GrotzingerJ@gtlaw.com*
REBEKAH S. GUYON (SBN 291037)
*GuyonR@gtlaw.com*
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Telephone: 310-586-7700; Facsimile: 310-586-7800

Attorneys for Defendants NBCUniversal Media, LLC,
erroneously sued as "NBCUniversal, Inc.;" F. Gary Gray;
O'Shea Jackson Sr., p/k/a Ice Cube; Andre Young, p/k/a Dr.
Dre; The Estate of Eric Wright, p/k/a Eazy E; Tomica Woods-
Wright, individually and as the personal representative of The
Estate of Eric Wright; Comptown Records, Inc.; Matt Alvarez;
Scott Bernstein; Legendary Pictures Funding, LLC, erroneously
sued as "Legendary Pictures;" Xenon Pictures, Inc., sued as
"Xenon Pictures, Inc./Xenon Entertainment Group;" Jonathan
Herman; Andrea Berloff; S. Leigh Savidge; and Alan Wenkus

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| GERALD E. HELLER, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>NBCUNIVERSAL, INC., et al.,<br><br>Defendants | CASE NO. 2:15-cv-09631-MWF-KS<br><br>NOTICE OF MOTION AND MOTION TO DISMISS CLAIMS 1-10 OF THE FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES<br><br>Date: March 28, 2016<br>Time: 10:00 a.m.<br>Room: 1600<br><br>Action Removed: December 15, 2015 |

TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on March 28, 2016 at 10:00 a.m. in Courtroom 1600 of the above-captioned Court, located at 312 North Spring Street, Los Angeles, California, Defendants NBCUniversal Media, LLC, erroneously sued as "NBCUniversal, Inc.;" F. Gary Gray; O'Shea Jackson Sr., p/k/a Ice Cube; Andre Young, p/k/a Dr. Dre; The Estate of Eric Wright, p/k/a Eazy E; Tomica Woods-Wright, individually and as the personal representative of The Estate of Eric Wright; Comptown Records, Inc.; Matt Alvarez; Scott Bernstein; Legendary Pictures Funding, LLC, erroneously sued as "Legendary Pictures;" Xenon Pictures, Inc., sued as "Xenon Pictures, Inc./Xenon Entertainment Group;" Jonathan Herman; Andrea Berloff; S. Leigh Savidge; and Alan Wenkus will and hereby do move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Claims 1-10 of the First Amended Complaint for failure to state a claim upon which relief can be granted, and Defendants will and hereby do move pursuant to L.R. 19-1 to dismiss Does 11-100 from the First Amended Complaint, which prohibits naming more than ten fictitious parties in a complaint.

This motion is based on this notice and the attached Memorandum of Points and Authorities.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on February 1, 2016, and this Court's January 7, 2016 Order Approving Stipulation Re First Amended Complaint and Briefing and Hearing Schedule on Responsive Motions.

DATED:  February 10, 2016                    GREENBERG TRAURIG, LLP


By:  _/s/  Jeff E. Scott_____
                    Jeff E. Scott
                    Attorneys for Defendants NBCUniversal Media,
                    LLC, erroneously sued as "NBCUniversal, Inc.;"
                    F. Gary Gray; O'Shea Jackson Sr., p/k/a Ice Cube;
                    Andre Young, p/k/a Dr. Dre; The Estate of Eric
                    Wright, p/k/a Eazy E; Tomica Woods-Wright,
                    individually and as the personal representative of
                    The Estate of Eric Wright; Comptown Records,

1

2

3

4

Inc.; Matt Alvarez; Scott Bernstein; Legendary Pictures Funding, LLC, erroneously sued as "Legendary Pictures;" Xenon Pictures, Inc., sued as "Xenon Pictures, Inc./Xenon Entertainment Group;" Jonathan Herman; Andrea Berloff; S. Leigh Savidge; and Alan Wenkus

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LA132449999

# **TABLE OF CONTENTS**

I.  INTRODUCTION AND SUMMARY OF MOTION ................................................. 1

II.  RELEVANT ALLEGATIONS ............................................................... 2

III.  ARGUMENT ..................................................................................... 5

    A.  Legal Standard ............................................................................ 5

    B.  The Court Should Dismiss Claims 1-6 For Improper Group Pleading........... 6

    C.  Claims 1-3 And 5-8 Fail To Identify The Allegedly Defamatory
        Statements. ................................................................................. 8

    D.  The Court Should Dismiss Claims 1-8 For Failure To Plead Actual
        Malice. ...................................................................................... 10

        1.  Plaintiff Is A Limited Purpose Public Figure. .................... 10

        2.  Plaintiff Fails To Properly Plead Actual Malice................... 11

    E.  The Court Should Dismiss Claims 2-3 and 5-8 As Duplicative of
        Plaintiff's Defamation Claim (Claim 1)............................................. 13

    F.  The Misappropriation of Likeness Claim (Claim 4) Is Facially Barred
        By the First Amendment. ............................................................... 14

    G.  Plaintiff Fails To State A Claim For Intentional Or Negligent
        Interference With Prospective Economic Advantage (Claims 5-6)............ 16

        1.  Plaintiff Has Not Alleged Any Specific Relationships...................... 17

        2.  Plaintiff Has Not Plausibly Alleged Defendants' Knowledge. .......... 18

        3.  Plaintiff Has Not Alleged That Defendants' Conduct Was The
            Proximate Cause Of Any Actual Disruption Or Harm. ..................... 18

        4.  Plaintiff Fails To Allege Independent Wrongfulness. ...................... 19

        5.  Plaintiff Does Not Allege That Defendants Owed Him A Duty. ....... 20

    H.  Plaintiff Fails To State A Claim For Breach Of Contract (Settlement
        Agreement) (Claim 7). ................................................................... 20

    I.  Plaintiff Fails To State A Claim For Breach Of Implied Covenant
        (Claim 8)................................................................................... 22

    J.  Plaintiff's Alleged Oral Contract Is Unenforceable (Claim 9). ................ 22

    K.  Plaintiff Fails To State A Claim For Breach Of Implied Covenant
        (Claim 10)................................................................................. 24

    L.  Excessive "Doe" Defendants Must Be Dismissed. ............................... 25

IV.  CONCLUSION................................................................................ 25

i

LA132449999

# TABLE OF AUTHORITIES

**Federal Cases**

*Alvarez v. Chevron Corp.*,
    656 F. 3d 925 (9th Cir. 2011) .................................................................22

*Arikat v. JP Morgan Chase & Co.*,
    430 F. Supp. 2d 1013 (N.D. Cal. 2006) ...................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................... passim

*Avila v. Cnty. of Los Angeles*,
    2015 WL 846786 (C.D. Cal. Feb. 26, 2015) ...........................................25

*Barkett v. Sentosa Props. LLC*,
    2015 WL 502319 (E.D. Cal. Feb. 5, 2015) .........................................24, 25

*Bassam v. Bank of America*,
    2015 WL 4127745 (C.D. Cal. Jul. 8, 2015).........................................7, 13

*Batts v. Bankers Life & Cas. Co.*,
    2014 WL 296925 (N.D. Cal. Jan. 27, 2014) ...........................................19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................6, 12, 18

*Biro v. Condé Nast*,
    807 F.3d 541, 2015 WL 8103736 (2d Cir. Dec 8, 2015) .....................12, 13

*Brooks v. Physicians Clinical Laboratory, Inc.*,
    2000 WL 336546 (E.D. Cal. Mar. 20, 2000) ...........................................14

*Chabra v. Southern Monterey County Memorial Hospital, Inc.*,
    1994 WL 564566 (N.D. Cal. Oct. 3, 1994) ..............................................9

*Charlson v. DHR Int'l Inc.*,
    2014 WL 4808851 (N.D. Cal. Sep. 26, 2014) ..........................................19

*Cher v. Forum Int'l Ltd.*,
    692 F.2d 634 (9th Cir. 1982) ................................................................15

*Cmty. for Creative Non-Violence v. Reid*,
    490 U.S. 730 (1989)............................................................................23

*Coppola v. Smith*,
    982 F. Supp. 2d 1133 (E.D. Cal. 2013) ...................................................12

*Crisanto v. County of Tulare*,
    2015 WL 7188165 (E.D. Cal. Nov 16, 2015).............................................12

ii

*Curtis Publ'g Co. v. Butts*,
  388 U.S. 130 (1975) ....................................................................22

*D.A.R.E. America v. Rolling Stone Magazine*,
  101 F. Supp. 2d 1270 (C.D. Cal. 2000) ......................................13

*Daly v. Viacom, Inc.*,
  238 F. Supp. 2d 1118 (N.D. Cal. 2002) ................................14, 15

*Damabeh v. 7-Eleven, Inc.*,
  2013 WL 1915867 (N.D. Cal. May 8, 2013) .....................17, 18, 20

*DocMagic, Inc. v. Ellie Mae, Inc.*,
  745 F. Supp. 2d 1119 (N.D. Cal. 2010) ......................................18

*Dodds v. American Broadcasting Company*,
  145 F.3d 1053 (9th Cir. 1998) ...................................................10

*Env. Furniture, Inc. v. Bina*,
  2010 WL 5060381 (C.D. Cal. Dec. 6, 2010) ...........................22, 24

*Exec. Bd. Of Culinary Workers*,
  542 F.2d 1076 (9th Cir. 1976) .....................................................9

*F.M. Tarbell Co. v. A & L Partners, Inc.*,
  2011 WL 1153539 (C.D. Cal. Mar. 23, 2011) ..............................18

*Fortaleza v. PNC Fin. Serv. Group, Inc.*,
  642 F. Supp. 2d 1012 (N.D. Cal. 2009) ........................................8

*Franchise Realty Interstate Corp. v. San Francisco Local Joint Exec. Bd. Of
  Culinary Workers*,
  542 F.2d 1076 (9th Cir. 1976) .....................................................7

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974) ...................................................................11

*Gete v. I.N.S.*,
  121 F.3d 1285 (9th Cir. 1997) ...............................................21, 22

*Harris v. Dillman*,
  2008 WL 2383939 (E.D. Cal. Jun. 6, 2008) ..................................8

*AE ex rel. Hernandez v. Portillo*,
  2011 WL 2173695 (E.D. Cal. Jun 2, 2011) ...................................8

*Jacobson v. Schwarzenegger*,
  357 F. Supp. 2d 1198 (C.D. Cal. 2004) ........................................9

*Johnson v. Fed. Home Loan Mortgage Corp.*,
  793 F.3d 1005 (9th Cir. 2015) ...............................................6, 12

iii

*Joseph Burstyn, Inc. v. Wilson*,
  343 U.S. 495 (1952) ................................................................... 7

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ................................................... 6

*Kechara House Buddhist Association Malaysia v. Does*,
  2015 WL 5538999 (C.D. Cal. Sep. 18, 2015) ......................... 8, 9

*Kennedy Funding, Inc. v. Chapman*,
  2010 WL 4509805 (N.D. Cal. Nov. 1, 2010) ............................... 9

*Leidholdt v. L.F.P., Inc.*,
  860 F.2d 890 (9th Cir. 1988) ................................................... 10

*Lib. Publications, Inc. v. Med. Economics Co.*,
  548 F. Supp. 1231 (E.D. Pa. 1982), *aff'd sub nom, Lib. Publications, Inc.
  v. Med. Economics Co.*, 714 F.2d 123 (3d Cir. 1983) ............... 24

*Makaeff v. Trump University, LLC*,
  715 F.3d 254 (9th Cir. 2013) ............................................. 11, 12

*Masson v. New Yorker Magazine, Inc.*,
  832 F. Supp. 1350 (N.D. Cal. 1993) ......................................... 13

*Matthews v. Wozencraft*,
  15 F.3d 432 (5th Cir. 1994) ..................................................... 16

*Mayfield v. Nat'l Assn. for Stock Car Auto Racing*, *Inc.*,
  674 F.3d 369 (4th Cir. 2012) ................................................... 12

*McColm v. Anber*,
  2006 WL 3645308 (N.D. Cal. Dec. 12, 2006) ............................. 9

*Murray v. Bailey*,
  613 F. Supp. 1276 (N.D. Cal. 1985) ................................... 12, 13

*Nuwintore v. U.S.*,
  2014 WL 807054 (E.D. Cal. Feb 28, 2014) ............................... 12

*O'Connor v. Uber Techs., Inc.*,
  58 F. Supp. 3d 989 (N.D. Cal. 2014) ............................. 16, 17, 19

*Okada v. Bank of America, N.A.*,
  2015 WL 5556937 (C.D. Cal. Sep. 16, 2015) ............................. 7

*Oorah, Inc. v. Schick*,
  552 Fed. Appx. 20 (2d Cir. 2014) ............................................. 21

*Partington v. Bugliosi*,
  56 F.3d 1147 (9th Cir. 1995) ................................................... 12

iv

*Punian v. Gillette Co.*,
   2015 WL 4967535 (N.D. Cal. Aug 20, 2015) ............................................. 12

*Ruffin-Steinback v. dePasse*,
   82 F. Supp. 2d 723 (E.D. Mich. 2000), *affirmed*, 267 F.3d 457 (6th Cir.
   2001) ........................................................................................................ 16

*In re Sagent Technology, Inc., Derivative Litigation*,
   278 F. Supp. 2d 1079 (N.D. Cal. 2003) ...................................................... 8

*Saldate v. Wilshire Credit Corp.*,
   268 F.R.D. 87 (E.D. Cal. 2010) .................................................................. 24

*Sarver v. The Hurt Locker, LLC*,
   2011 WL 11574477 (C.D. Cal. Oct. 13, 2011) .............................. 7, 8, 14

*Schatz v. Republican State Leadership Committee.*,
   669 F.3d 50 (1st Cir. 2012) ......................................................................... 12

*Schell v. Witek*,
   218 F.3d 1017 (9th Cir. 2000) ..................................................................... 21

*Seale v. Gramercy Pictures*,
   949 F. Supp. 331 (E.D. Pa. 1996) ............................................................... 16

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*,
   983 F. Supp. 1303 (N.D. Cal. 1997) ................................................... 19, 20

*Smith v. Santa Rosa Press Democrat*,
   2011 WL 5006463 (N.D. Cal. Oct. 20, 2011) .......................................... 14

*St. Amant v. Thompson*,
   390 U.S. 727 (1968) ..................................................................................... 12

*Thomas v. Los Angeles Times Communications, LLC*,
   189 F. Supp. 2d 1005 (C.D. Cal. 2002) ..................................................... 10

*UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*,
   2015 WL 4606077 (C.D. Cal. Jun. 22, 2015) ........................................... 17

*Unelko Corp. v. Rooney*,
   912 F.2d 1049 (9th Cir. 1990) ..................................................................... 10

*Valente-Kritzer Video v. Pinckney*,
   881 F.2d 772 (9th Cir. 1989), *cert. denied,* 493 U.S. 1062 (1990) ........ 23, 24

*Vasile v. Flagship Fin. Group, LLC*,
   2014 WL 2700896 (E.D. Cal. Jun. 13, 2014) ........................................... 21

*Vijay v. Twentieth Century Fox Film Corp.*,
   2014 WL 5460585 (C.D. Cal. Oct. 27, 2014) ........................................... 15

v

LA132449999

*Wendell v. Johnson & Johnson*,
  2010 WL 271423 (N.D. Cal. Jan. 20, 2010) ................................................. 6

*Whitehurst v. Showtime Networks, Inc.*,
  2009 WL 3052663 (E.D. Tex. Sep 22, 2009) ............................................... 16

*William O'Neil & Co. Inc. v. Valdea.com Inc.*,
  202 F. Supp. 2d 1113 (C.D. Cal. 2002) .............................................. 10, 16

*Wynn v. Chanos*,
  75 F. Supp. 3d 1228 (N.D. Cal. 2014) ............................................... 11, 13

**State Cases**

*Blatty v. New York Times Co.*,
  42 Cal. 3d 1033 (1986) ................................................................. 8, 10

*Bustamante v. Intuit, Inc.*,
  141 Cal. App. 4th 199 (2006) ............................................................ 21

*Careau & Co. v. Sec. P. Bus. Credit, Inc.*,
  222 Cal. App. 3d 1371 (1990), *as modified on denial of reh'g* (Oct. 31,
  2001) ...................................................................................... 22

*Comedy III Productions, Inc. v. Gary Saderup Inc.*,
  25 Cal. 4th 387 (2001) ................................................................... 15

*Di Giorgio Fruit Corp. v. American Federation of Labor and Congress of
  Indus. Org.*,
  215 Cal. App. 2d 560 (1963) ........................................................... 8, 9

*Dora v. Frontline Video, Inc.*,
  15 Cal. App. 4th 536 (1993) ................................................... 14, 15, 16

*Ferlauto v. Hamsher*,
  74 Cal. App. 4th 1394 (1999) ........................................................... 22

*Foley v. Interactive Data Corp.*,
  47 Cal. 3d 654 (1988) ................................................................... 24

*Guglielmi v. Spelling-Goldberg Productions*,
  25 Cal. 3d 860 (1979) ................................................................... 15

*J'Aire Corp. v. Gregory*,
  24 Cal. 3d 799 (1979) ............................................................... 17, 19

*JRS Prods., Inc. v. Matsushita Elec. Corp. of Am.*,
  115 Cal. App. 4th 168 (2004), *as modified on denial of reh'g* (Feb. 25,
  2004) ...................................................................................... 19

vi

*Live Oak Publishing Co. v. Cohagan*,
  234 Cal. App. 3d 1277 (1991) ................................................................. 11

*Montana v. San Jose Mercury News, Inc.*,
  34 Cal. App. 4th 790 (1995) ........................................................... 14, 16

*Smith v. City and County of San Francisco*,
  225 Cal. App. 3d 38 (1990) ................................................................... 24

*Stewart v. Rolling Stone, LLC*,
  181 Cal. App. 4th 664 (2010) ............................................................... 16

*Vivian v. Labrucherie*,
  214 Cal. App. 4th 267 (2013) ............................................................... 21

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*,
  42 Cal. App. 4th 507 (1996) ........................................................... 17, 18

*Wilson v. Loew's Inc.*,
  142 Cal. App. 2d 183 (1956) ........................................................... 18, 19

*Youst v. Longo*,
  43 Cal. 3d 64 (1987) ....................................................................... 17, 18

**Federal Statutes**

17 U.S.C. § 101 ........................................................................... 23, 24

17 U.S.C. § 102 ............................................................................... 23

17 U.S.C. § 201(a) ...................................................................... 22, 23

17 U.S.C. § 201(b) ........................................................................... 23

17 U.S.C. § 204(a) ........................................................................... 23

**State Statutes**

Cal. Civ. Code § 45 ............................................................................ 8

**Rules**

Fed. R. Civ. P. 8 ............................................................................... 2

Fed. R. Civ. P. 8(a)(2) ........................................................................ 7

Fed. R. Civ. P. 9(b) .......................................................................... 12

Fed R. Civ. P. 12(b)(6) ........................................................................ 5

L.R. 19-1 .................................................................................. 2, 25

vii

1

**Other Authorities**

2

Gerald Heller & Gil Reavill, *Ruthless: A Memoir* (2006) ....................................................4

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LA132449999

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND SUMMARY OF MOTION

Defendants removed this case to federal court based on Plaintiff's copyright infringement claim, and now move to dismiss all state law claims.  The case arises from a theatrical motion picture entitled "Straight Outta Compton" (the "Film").  The Film portrays the rise of the musical group "N.W.A."  The group's story includes N.W.A.'s former manager, Plaintiff Gerald Heller, who is depicted in the Film.  Unhappy with how he is portrayed in the Film, Plaintiff sues for defamation and 10 related claims in his First Amended Complaint ("FAC").  However, as in his initial Complaint, Plaintiff still fails to identify the allegedly defamatory statements in the Film on which he bases his claims, and does not explain how each named Defendant is purportedly responsible for any such statements.  Instead, the FAC is a hodgepodge of conclusory allegations and subjective interpretations of the Film and does not meet federal pleading requirements.  It also suffers from numerous other legal deficiencies.

*First*, in Claims 1-6, Plaintiff lumps together 12 of the 15 named Defendants, seeking to hold them all collectively liable for the Film's depiction of Plaintiff without any factual allegations purporting to explain why their unidentified roles in the Film render each Defendant liable for the challenged statements in the Film.  People contribute to major motion pictures in very different ways, and Plaintiff's "group pleading" leaves Defendants guessing what they allegedly did wrong, in violation of Rule 8's basic notice pleading standard.

*Second*, Claims 1-3 and 5-8, all of which are injurious falsehood claims, should be dismissed because, as a matter of logic and law, a claim based on defamatory statements must specifically identify those statements.  Plaintiff's list of his own interpretations of certain scenes falls far short of the requirement to identify the specific statements on which he is suing.

*Third*, Claims 1-8, all of which include injurious falsehood allegations, fail because Plaintiff pleads no facts supporting his conclusion that Defendants acted with

1

"actual malice."  Naked conclusions do not satisfy this constitutionally mandated pleading obligation under Rule 8, Fed. R. Civ. P.

*Fourth*, because Claims 2-3 and 5-8 are based on the same alleged conduct underlying the defamation claim (Claim 1), they should be dismissed as improperly duplicative.

*Fifth*, Plaintiff's claim for misappropriation of likeness (Claim 4), based on his depiction in the Film, is facially barred by the First Amendment.

*Sixth*, Claims 5 and 6 for interference with prospective economic advantage fail because Plaintiff pleads no facts supporting the essential elements of these claims.

*Seventh*, Plaintiff's breach of a "non-disparagement" contract (Claim 7) fails because Plaintiff does not identify the disparaging statements allegedly attributable to those named Defendants, or who made them.  Moreover, the non-disparagement provision is too vague to be enforced.

*Eighth*, Plaintiff's breach of oral contract claim based on his putative ownership interest in certain alleged screenplays (Claim 9) is barred because, as a matter of law, an alleged oral contract could not transfer ownership of the screenplays from the Defendant authors to Plaintiff.

*Ninth*, the two breach of implied covenant claims (Claims 8 and 10), which correspond to the two breach of contract claims (Claims 7 and 9), fail because they are entirely duplicative of the respective breach of contract claims.

Finally, L.R. 19-1 prohibits Plaintiff from naming Does 11-100 as fictitious Defendants.

## II.   RELEVANT ALLEGATIONS

Plaintiff alleges that "this action arises out of acts of defamation, theft, misappropriation and other tortious behavior … regarding certain scenes, words, statements, images, implications and innuendo within a theatrical Motion Picture entitled, 'Straight Outta Compton' (the 'Film') that all Defendants noted in the caption above and Does 20-50 had a hand in creating, writing, directing, producing, editing, and/or

2

LA132449999

1    distributing globally to the detriment of Plaintiff Gerald E. Heller."  FAC ¶ 1.

2        The FAC names 15 parties (and Does 1-100) as Defendants.  Except in Claims 7-

3    10, against five Defendants, Plaintiff simply lumps together 12 of those 15 Defendants in

4    Claims 1-6, and 14 of them in Claim 11, and fails to state what they did or even how they

5    were connected to the Film other than labeling some of them as "credited producers."  *Id.*

6    at ¶¶ 8-10, 12, 14, 15; *see id.* at ¶¶ 5-19.[1]

7        Plaintiff alleges that he "is a highly successful and respected business professional

8    in the music industry, since the late 1960's and 1970's …."  *Id.* at ¶ 22.  "Through a set

9    of circumstances, in 1986-87, Plaintiff met Defendants Eric Wright (p.k.a. 'Eazy E'),

10    Andre Young (p.k.a. 'Dr. Dre'), and O'Shea Jackson[ ](p.k.a. 'Ice Cube') [and] in early

11    1987, Defendant Eazy E formed an independent Record Company called RUTHLESS

12    RECORDS ('Ruthless')."  *Id.* at ¶ 23.  Plaintiff managed the musical group N.W.A.

13    (except for Ice Cube) and N.W.A. "became hugely successful."  *Id.* at ¶ 26; *see* FAC ¶

14    24.

15        "In or around May 21, 2001, Plaintiff entered into an oral contract for the services

16    of Defendants, S. Leigh Savidge and Alan Wenkus of Xenon Pictures, Inc./Xenon

17    Entertainment Group ('Xenon') to collaborate with Plaintiff to write an original

18    screenplay relating to the story of Ruthless and N.W.A."  *Id.* at ¶ 27.  "In furtherance of

19    this agreement, Defendants Savidge and Wenkus worked with and met with Plaintiff and

20    prepared at least four draft screenplays … entitled 'Straight Outta Compton.'"  *Id.*

21    Plaintiff does not allege that Savidge and Wenkus were his employees or that they signed

22    any work for hire (or any) agreement with him.  Nor does he identify a single false or

23    defamatory statement in any of those draft screenplays; to the contrary, he acknowledges

24    those screenplays are a primary source of the Film's content, which he concedes is

25    "factually accurate."  *Id.* at ¶ 38.

26    _____

27    [1]  In Claims 7-10, Plaintiff alleges that Defendants Tomica Woods-Wright, Comptown
Records, Inc., S. Leigh Savidge, Alan Wenkus and Xenon Pictures, Inc./Xenon

28    Entertainment Group breached contracts and implied covenants.  As discussed below,
Plaintiff fails to state a plausible claim against any of them.

3

"In or about 2005, Plaintiff also began to write a book relating to the story of Ruthless and N.W.A. that contained similar substantive content as the screenplays that Defendants Savidge and Wenkus were drafting …." *Id*. at ¶ 29. "In 2006, Simon and Schuster published the book written by Plaintiff and his co-author, Gil Reavill, entitled 'RUTHLESS: A MEMOIR.'; 'copyright © by Jerry Heller.'" *Id*. at ¶ 30.

The Film was released domestically and internationally in 2015. FAC ¶ 31. "Plaintiff is informed and believes, and thereon alleges, that the Film is based on the … screenplay drafted by Defendants Savidge and Wenkus, … and that Defendants Savidge/Wenkus/Xenon sold the screenplay, behind Plaintiff's back …." *Id*. at ¶ 32.

Plaintiff alleges that "[t]he Film is littered with false statements that harm the reputation of Plaintiff and aim to ridicule and lower him in the opinion of the community and to deter third persons from associating or dealing with him." *Id*. at ¶ 35. However, Plaintiff alleges only general, subjective interpretations of certain scenes in the Film, as follows:

- Heller is the 'bad-guy' in the movie who is solely responsible for the demise of N.W.A.;
- Heller is a sleazy manager who took advantage of Defendants Eazy E, Dr. Dre and Ice Cube, effectively, by stealing their money;
- Heller steered Dr. Dre and Ice Cube away from hiring an attorney to review any contracts so they could never get paid;
- Heller intentionally withheld a $75,000 check from Ice Cube that rightfully belonged to Ice Cube;
- Heller induced Dr. Dre to sign an unfavorable contract;
- Heller made sure he was paid more than his fair share to the detriment of the other members of N.W.A.;
- Heller did not pay numerous bills and expenses of N.W.A., rather, he paid himself first;

4

- Heller abandoned Dr. Dre and the D.O.C. after his car accident, but Suge Knight stepped in to take care of them;

- Heller intentionally kept the members of N.W.A. in the dark regarding finances;

- Heller was enjoying 'lobster brunches' while the contracts of Defendants Dr. Dre and Ice Cube were 'still being finalized' and relegated to eating 'Fatburger';

- Dr. Dre accuses Heller of stealing money and says that Ice Cube was right about him;

- Ice Cube states in an interview at his home that the Jewish Defense League should not condone Heller's behavior in trying to get him to sign a contract without his attorney's review;

- Tomika Woods-Wright tells Eazy-E that Heller took advantage of Heller and left him with 2-3 years of unpaid bills;

- Eazy E fires Heller in in Heller's kitchen after accusing him of illegal activity, and Heller says in his defense that Eazy-E screwed things up and that Heller took actions to cover his own (rear end).

*Id*. at ¶ 36.

Although Plaintiff sued 12 of the 15 named Defendants for defamation, he alleges that "these defamatory statements in the Film are published by Defendant Tomika Woods-Wright [*sic*] (Eazy E's widow and a credited producer of the Film) and also constitute a clear breach of the non-disparagement clause under the 1999 Settlement Agreement and Releases between Plaintiff and Defendants Woods-Wright and Comptown Records, Inc." *Id*. at ¶ 37; Ex. B.

### III.   ARGUMENT

#### A.   Legal Standard

Dismissal is proper under Fed R. Civ. P. 12(b)(6) where the complaint lacks sufficient facts to state a plausible claim. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009),

5

LA132449999

citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 556.

These federal pleading standards apply here.  *Wendell v. Johnson & Johnson*, No. C 09-04124 CW, 2010 WL 271423, *2 (N.D. Cal. Jan. 20, 2010) ("This action has now been removed; therefore, federal law, not state law, governs the specificity that Plaintiffs must plead in order to survive a 12(b)(6) motion."); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

### B.   The Court Should Dismiss Claims 1-6 For Improper Group Pleading.

Claims 1-6 seek relief against 12 of the 15 named defendants based on the Film's depiction of Plaintiff without identifying any Defendant's alleged role in that challenged portion of the Film's content.  The FAC simply lumps all 12 of these named Defendants into each of these claims, concluding only that, "as credited producers," they "are each responsible for the publication" of unidentified false statements in the Film (FAC at ¶¶ 42, 57, 67) by having played one or more unidentified roles "in creating, writing, directing, producing, editing and/or distributing" the Film (*id*. at ¶¶ 1, 5-6, 8-10, 12-19). However, there is and can be no plausible allegation that ***all*** of the myriad writing, production and distribution functions required to make and publish a major motion picture like the Film were or could be performed by ***each one*** of these Defendants as a "credited producer," or that all of those functions were responsible for the challenged portion of the Film's content.  Generic labeling of a Defendant as having some unidentified role in the Film as a "credited producer" cannot satisfy the requirement to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Johnson v. Fed. Home Loan Mortgage Corp.,* 793 F.3d 1005, 1007 (9th Cir. 2015).

6

Where, as here, all defendants are not "similarly situated" in their alleged conduct, a Complaint "must be dismissed if it does not indicate which individual defendant or defendants [are] responsible for which allegedly wrongful act" and thus does not satisfy the basic notice pleading requirements of Fed. R. Civ. P. 8(a)(2). *Bassam v. Bank of America*, No. CV 15-00587 MMM FFMX, 2015 WL 4127745, at *7 (C.D. Cal. Jul. 8, 2015); *accord*, *Okada v. Bank of America, N.A.*, NO. SA CV150098I CJC EX, 2015 WL 5556937, at *5 (C.D. Cal. Sep. 16, 2015) (dismissing statutory claim because it "makes no effort to differentiate the Defendants' conduct, instead merely lumping all of the Defendants together and treating them as one for the purposes of the UCL claim.").[2]

Accordingly, this prohibition against "group pleading" applies to Claims 1-6, all of which are based on the same alleged conduct.

Moreover, because making and distributing films is protected First Amendment activity,[3] Plaintiff was required to assert even "more specific allegations than would otherwise be required." *Franchise Realty Interstate Corp. v. San Francisco Local Joint*

---

[2]  Plaintiff concedes portions of the Film are truthful, and thus non-actionable as defamation-related claims.  FAC at ¶¶ 27-29, 38, 110, 122.  Because Plaintiff does not allege who did what on the Film, there is no way to know who was responsible for alleged defamatory content versus admittedly truthful content.  For example, Plaintiff admits the screenplays written by Defendants Savidge and Wenkus were accurate because those Defendants' screenplays contained "similar substantive content" to Plaintiff's own account of the facts in his book.  *Id*. at ¶¶ 27-29, 38.  Nonetheless, those two Defendants are both labeled "credited producers" (*id*. at ¶¶ 18-19) and lumped together with all other Defendants in Claims 1-3 and 5-6, which seek to impose liability on all of them for allegedly defamatory statements in the Film not even alleged to have been written by those Defendants.  *Id*. at ¶¶ 29, 38.  Nor can labeling each defendant as a "credited producer" circumvent this prohibition against group pleading.  "Credited producers" include numerous roles unrelated to content—ranging from co-financing the Film, to the hiring, firing and supervision of below-the-line personnel.  Lumping together all "credited producers" without identifying their respective roles in the Film's allegedly false and defamatory content itself violates the prohibition against "group pleading".
[3]  *Sarver v. The Hurt Locker, LLC*, NO. 2:10-CV-09034-JHN, 2011 WL 11574477, at *4 (C.D. Cal. Oct. 13, 2011) ("Expression by means of motion pictures is included within the free speech and free press guaranty of the First and Fourteenth Amendments.") (*quoting Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 502 (1952)).

7

*Exec. Bd. Of Culinary Workers*, 542 F.2d 1076, 1082-83 (9th Cir. 1976); *accord*, *Kechara House Buddhist Association Malaysia v. Does*, NO. 15-CV-00332-DMR, 2015 WL 5538999, at *5 (C.D. Cal. Sep. 18, 2015).  Plaintiff's "group pleading" of all 12 of these Defendants falls far short of this standard.

"Defamation 'allegations are insufficient [if] they are ascribed to defendants collectively rather than to individual defendants.'"  *Harris v. Dillman*, NO. 2:08-CV-98-GEB-CMK, 2008 WL 2383939, at *5 (E.D. Cal. Jun. 6, 2008) (quoting *Arikat v. JP Morgan Chase & Co.*, 430 F. Supp. 2d 1013, 1020 (N.D. Cal. 2006)); *accord*, *AE ex rel. Hernandez v. Portillo*, No. CV F 09-2204 LJO DLB, 2011 WL 2173695, at *4 (E.D. Cal. Jun 2, 2011) (same); *Fortaleza v. PNC Fin. Serv. Group, Inc.*, 642 F. Supp. 2d 1012, 1026 (N.D. Cal. 2009) (dismissing defamation claim alleging "all defendants" made false statements about the plaintiff's creditworthiness because "plaintiff does not allege any specific claim against any specific defendant").

Lumping all of the Defendants together deprives each defendant of the notice of what he or she allegedly did wrong to which that defendant is entitled.  *In re Sagent Technology, Inc., Derivative Litigation*, 278 F. Supp. 2d 1079, 1094-95 (N.D. Cal. 2003) (dismissing claims because improper group pleading fails to "give 'fair notice'").

## C.   Claims 1-3 And 5-8 Fail To Identify The Allegedly Defamatory Statements.

Claims 1-3 and 5-8 are all based on the publication of allegedly false and defamatory statements in the Film.[4]  Although Plaintiff alleges they are both libelous and slanderous (FAC at ¶¶ 48-49), federal and state courts in California analyze such claims in the context of motion pictures under the rubric of "libel" and Cal. Civ. Code § 45.  *Sarver*, 2011 WL 11574477, at *8; *Di Giorgio Fruit Corp. v. American Federation of*

---

[4]  As discussed below, because Plaintiff's tortious interference claims (Claims 5-6), and his "non-disparagement" agreement claims (Clams 7-8), are also based on alleged defamatory statements in the Film, these claims also are subject to the pleading and First Amendment rules applicable to the defamation, trade libel and false light claims (Claims 1-3).  *See*, *e.g.*, *Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1043 (1986).

LA132449999

*Labor and Congress of Indus. Org.*, 215 Cal. App. 2d 560, 569 (1963).

To state a defamation claim, "the defamatory statement **must be specifically identified, and the plaintiff must plead the substance of the statement**."  *McColm v. Anber*, NO. C06-7369 PJH, 2006 WL 3645308, at *11 (N.D. Cal. Dec. 12, 2006) (emphasis added); *accord, Jacobson v. Schwarzenegger*, 357 F. Supp. 2d 1198, 1216 (C.D. Cal. 2004) (same); *Chabra v. Southern Monterey County Memorial Hospital, Inc.*, NO. CIV. C 94 20335 FAI, 1994 WL 564566, at *7 (N.D. Cal. Oct. 3, 1994) ("the words constituting libel or slander must be specifically identified, if not pled verbatim"); *Kechara House*, 2015 WL 5538999, at *5 ("complaint sets forth the statements made on the blogs in unspecific, general terms.  This is inadequate … since … the court can only speculate about the actual words that constitute the alleged defamatory statements.").

The FAC does not even approach satisfying this critical pleading requirement. While Plaintiff alleges there are defamatory "scenes, words, statements, images, implications and innuendo" in the Film, and that the Film is "littered with false statements," he does not "specifically" identify any false statements, but instead alleges a list of "points" reflecting only Plaintiff's subjective interpretations of the Film without identifying the statements made in the Film that allegedly create these purported implications.  FAC at ¶¶ 1, 35-36.

This pleading failure is fatal to the FAC for two critical reasons.  *First*, there is no way for any Defendant to know what specific statements Plaintiff believes are defamatory or how each Defendant is allegedly responsible for each statement.  *See Kennedy Funding, Inc. v. Chapman*, NO. C 09-01957 RS, 2010 WL 4509805, at *5 (N.D. Cal. Nov. 1, 2010) (dismissing libel claim for failure to identify which defendant made which allegedly false statements or "why any statement by [defendant] Keeton provides the basis for [defendant] Kennedy's liability").

*Second*, while false and defamatory implications drawn from statements may be actionable in some circumstances, Plaintiff must specifically identify the published statements in the Film purportedly creating those implications to enable the Court to

9

determine if the published statement can reasonably be understood to convey the alleged implications.  When presented with "allegedly defamatory implications identified by Plaintiff," the plaintiff "must show that the words [defendant used] were reasonably capable of sustaining [the alleged defamatory] meaning."  *Thomas v. Los Angeles Times Communications, LLC*, 189 F. Supp. 2d 1005, 1013 (C.D. Cal. 2002); *Dodds v. American Broadcasting Company,* 145 F.3d 1053, 1063-64 & 1065-66 (9th Cir. 1998) (affirming dismissal of several implied defamation claims as a question of law).  Accordingly, Plaintiff cannot plead defamatory implications based solely on his own subjective interpretations of a handful of scenes in the Film.

> **D.**   **The Court Should Dismiss Claims 1-8 For Failure To Plead Actual Malice.**

Plaintiff's improper "group pleading," and failure to identify the allegedly false statements in the Film, are especially egregious given his constitutional obligation to allege facts demonstrating the "actual malice" of each Defendant sued for defamation and related injurious falsehood claims.[5]

> 1.   Plaintiff Is A Limited Purpose Public Figure.

Based on Plaintiff's allegations, he is at least a "limited purpose public figure" who voluntarily thrust himself into a public controversy over N.W.A., thereby requiring

---

[5]  This actual malice requirement in defamation claims also applies to related claims based on allegedly false and defamatory statements, regardless of how denominated, including false light, trade libel and tortious interference with business relationships. *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1057-58 (9th Cir. 1990) (trade libel and tortious interference); *Leidholdt v. L.F.P., Inc.*, 860 F.2d 890, 893, n.4 (9th Cir. 1988) (public figure plaintiff cannot recover for false light invasion of privacy "unless she also shows that the false statements were made with 'actual malice'") (citation omitted).  As discussed below, the same is true for a misappropriation of likeness claim by a public figure where, as here, it is predicated on publication of a matter of public interest. *William O'Neil & Co. Inc. v. Valdea.com Inc.*, 202 F. Supp. 2d 1113, 1118-20 (C.D. Cal. 2002).  "Although the limitations that define the First Amendment's zone of protection for the press were established in defamation actions, they are not peculiar to such actions but apply to all claims whose gravamen is the alleged injurious falsehood of a statement." *Blatty*, 42 Cal. 3d at 1043.

LA132449999

Plaintiff to allege (and later prove with clear and convincing evidence) that *each*

*Defendant* acted with "actual malice." A plaintiff becomes such a "limited purpose

public figure" where (i) "public controversy existed when the statements were made;"

(ii) "the alleged defamation is related to the plaintiff's participation in the controversy;"

and (iii) "the plaintiff voluntarily injected himself into the controversy for the purpose of

influencing the controversy's ultimate resolution." *Makaeff v. Trump University, LLC*,

715 F.3d 254, 266 (9th Cir. 2013). Plaintiff's own allegations show he is a limited

purpose public figure. FAC at ¶¶ 22-30 (public controversy has existed since at least

2001 when Plaintiff allegedly collaborated on screenplay about his role in the "hugely

successful" N.W.A., followed by the publication of his book about the same controversy

in 2006, through which Plaintiff injected himself into the controversy); ¶¶ 31-40 (the

preexisting public controversy was a subject of the Film).[6]

> 2.    Plaintiff Fails To Properly Plead Actual Malice.

To allege actual malice, Plaintiff must plead facts supporting a conclusion that

each Defendant made the challenged statements "with 'actual malice', i.e., knowledge of

their falsity or reckless disregard of their truth." *Makaeff*, 715 F.3d at 270 (*quoting Gertz

v. Robert Welch, Inc.,* 418 U.S. 323, 342 (1974)). "To demonstrate reckless disregard of

the truth" a plaintiff must allege and then prove by clear and convincing evidence that

each defendant "entertained serious doubts as to the truth" of the challenged statements.

*Makaeff*, 715 F.3d at 270 (*quoting Gertz*, 418 U.S. at 331-32, 334, n.6).

A recent decision from the Northern District of California confirms that

"conclusory" allegations the defendant had "published the statements with reckless

disregard for the truth" are "insufficient to satisfy the 'demanding burden' for pleading

actual malice in defamation actions." *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1239 (N.D.

Cal. 2014). That is precisely what Plaintiff did here – he alleges no facts creating

---

[6]  "Generally, authors are considered to have participated sufficiently in public
controversies or otherwise involved themselves in matters of public concern as to be
public figures." *Live Oak Publishing Co. v. Cohagan*, 234 Cal. App. 3d 1277, 1289
1991) (citation and internal quotation marks omitted).

plausible inferences that every Defendant subjectively knew of the alleged falsity of the challenged (but unidentified) statements in the Film, or entertained serious doubts as to their truth, when the Film was published.  *Iqbal*, 556 U.S. at 678; *Johnson*, 793 F.3d at 1007.[7]

Indeed, the only factual allegations in the FAC that even purport to bolster Plaintiff's conclusory allegations of "actual malice" do not create a reasonable inference of actual malice as a matter of law.  In paragraph 50, Plaintiff alleges actual malice exists because "Defendants utterly failed to investigate the facts prior to publishing these statements in the Film."  However, even if true (and it is not), a failure to investigate does not constitute actual malice.  *St. Amant v. Thompson*, 390 U.S. 727, 733 (1968); *Makaeff*, 715 F.3d at 270; *Murray v. Bailey*, 613 F. Supp. 1276, 1280 (N.D. Cal. 1985).[8]

---

[7]  In *Iqbal*, the Supreme Court expressly **rejected** arguments that allegations of "malice, intent, knowledge and other conditions of a person's mind" should not be subject to this fact pleading requirement because Rule 9(b), Fed. R. Civ. P., allows them to be alleged "generally":  "Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard.  It does not give him a license to evade the less rigid – though still operative – strictures of Rule 8."  *Iqbal*, 556 U.S. at 686-87.  Federal courts in California have applied *Iqbal* to preclude conclusory pleading of knowledge, malice and intent.  *Punian v. Gillette Co.*, NO. 14-CV-05028-LHK, 2015 WL 4967535, at *9-*10 (N.D. Cal. Aug 20, 2015); *Nuwintore v. U.S.*, NO. 1:13-CV-00967-AWI-JL, 2014 WL 807054, at *4-*5 (E.D. Cal. Feb 28, 2014); *Crisanto v. County of Tulare*, NO. 115CV01527 LJO BAM, 2015 WL 7188165, at *6 (E.D. Cal. Nov 16, 2015); *Coppola v. Smith*, 982 F. Supp.2d 1133, 1144-45 (E.D. Cal. 2013).  Significantly, *Nuwintore*, *Crisanto* and *Coppola* all expressly cite with approval the Fourth Circuit's decision in *Mayfield v. Nat'l Assn. for Stock Car Auto Racing, Inc.,* 674 F.3d 369, 377-78 (4th Cir. 2012), which had applied this *Iqbal* fact pleading requirement to allegations of actual malice in defamation actions.  *Accord, Biro v. Condé Nast*,  807 F.3d 541, 544-46 (2d Cir. 2015) (affirming dismissal of defamation complaint for failure to allege facts sufficient to render its conclusory allegations of actual malice plausible); *Schatz v. Republican State Leadership Committee.*, 669 F.3d 50, 56, 58 (1st Cir. 2012) (affirming dismissal of defamation complaint for using "actual malice-buzzwords," because under *Iqbal* and *Twombly*, "to make out a plausible malice claim, a plaintiff must still lay out enough facts from which malice might be reasonably inferred").
[8] Contrary to the suggestion in paragraph 50 of the First Amended Complaint**,** alleged **"**factual errors" in  a docudrama like the Film do not show actual malice.  *See, Partington v. Bugliosi*, 56 F.3d 1147, 1155 (9th Cir. 1995).

Moreover, Plaintiff's conclusory pleading of actual malice is belied by his own allegations.  Plaintiff alleges in paragraph 37 that "these defamatory statements in the Film are published by Defendant TomikaWoods-Wright [*sic*] (Eazy E's widow)."[9] Additionally, many of the allegedly false and defamatory implications referenced in paragraph 36 are predicated on actions purportedly taken by direct participants like Defendants/former N.W.A. members Ice Cube and Dr. Dre.  However, there are no factual allegations at all from which a reasonable inference could be drawn that any Defendant entertained serious doubts as to the truth of what they were allegedly told by direct participants in the controversy, as required by *Iqbal*.  *Wynn v. Chanos*, 75 F. Supp. 3d at 1239; *Biro v. Conde Nast*, 807 F.3d at 546.[10]

Finally, Plaintiff's improper group pleading has compounded his failure to properly plead actual malice.  Those Defendants who were personally present at the events in the 1980s and '90s depicted in the Film are certainly not "similarly situated" to those other Defendants who participated in the filmmaking process decades later. *Bassam*, 2015 WL 4127745, at *7.

### E.     The Court Should Dismiss Claims 2-3 and 5-8 As Duplicative of Plaintiff's Defamation Claim (Claim 1).

Plaintiff alleges trade libel (Claim 2), false light (Claim 3), intentional and negligent tortious interference (Claims 5-6) and breach of contract/implied covenant (Claims 7-8) based on the publication in the Film of the same allegedly false and unidentified "statements" underlying the defamation claim (Claim 1).  These six claims incorporate by reference the factual allegations from the defamation claim and the "Facts

---

[9]  Eric Wright, p/k/a "Eazy E," was a member of N.W.A.  FAC at ¶ 24.

[10]  Plaintiff seeks to circumvent the "demanding" pleading requirement for actual malice by alleging in paragraph 21 that "each Defendant was the agent, principal and/or employee of each other."  However, actual malice cannot be imputed to a defendant vicariously through an agency relationship (other than an employment relationship not alleged here).  *Murray v. Bailey*, 613 F. Supp. 1276, 1281 (N.D. Cal. 1985); *Masson v. New Yorker Magazine, Inc.*, 832 F. Supp. 1350, 1370 (N.D. Cal. 1993); *D.A.R.E. America v. Rolling Stone Magazine*, 101 F. Supp. 2d 1270, 1280 (C.D. Cal. 2000).

13

Common To All Counts" alleged in paragraphs 22-40, and are based on the same purportedly false and defamatory implications alleged in paragraph 36.  FAC at ¶¶ 55-56, 60, 66-67, 81, 87, 92, 96, and 98.

Because they are all based on the same purported implications, they are redundant of the defamation claim and should be dismissed.  *Sarver*, 2011 WL 11574477, at *10 ("Plaintiff's false light privacy claim and his defamation claims are redundant because they are based on the same publication or utterance."); *Brooks v. Physicians Clinical Laboratory, Inc.*, NO. CIV S-99-2155WBSDAD, 2000 WL 336546, at *4 (E.D. Cal. Mar. 20, 2000) ("Plaintiff's false light claim is duplicative of his libel claim and should, accordingly, be dismissed"); *Smith v. Santa Rosa Press Democrat*, NO. C 11-02411 SI, 2011 WL 5006463, at *6 (N.D. Cal. Oct. 20, 2011) ("The other claims plaintiff attempts to raise – false light, intrusion on solitude, public disclosure of private facts and civil conspiracy – rest on the same facts as her defamation claim … and must be dismissed ….").

### F.  The Misappropriation of Likeness Claim (Claim 4) Is Facially Barred By the First Amendment.

In Claim 4, Plaintiff alleges "misappropriation of likeness" under California law based on the Film's depiction of him without his permission.  However, "no cause of action will lie for the publication of matters in the public interest."  *Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790, 792 (1995) (affirming dismissal of common law and statutory claims for misappropriation of likeness).

This "public interest" exception to liability for misappropriation of likeness claims is predicated on the First Amendment:  "public interest in the subject matter of [a] program gives rise to a constitutional protection against liability."  *Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536, 542-43(1993) (documentary film chronicling events and public personalities in the early days of surfing not subject to claim for appropriation of likeness, even though plaintiff alleged the documentary "erroneously characterizes me and contains prevarications about me"); *Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118,

14

1122 (N.D. Cal. 2002) (dismissing misappropriation of likeness claims based on television film, because "a defense under the First Amendment is provided where the publication or dissemination of matters is in the public interest"); *Vijay v. Twentieth Century Fox Film Corp.*, NO. CV 14542014 WL 5460585, at *4 (C.D. Cal. Oct. 27, 2014) ("Under the First Amendment, a cause of action for appropriation of another's 'name and likeness may not be maintained' against 'expressive works, whether factual or fictional,'" quoting *Daly*).

Accordingly, "[t]he California Supreme Court has subjected the 'right of publicity' under California law to a narrowing interpretation which accords with First Amendment values." *Cher v. Forum Int'l Ltd.*, 692 F.2d 634, 638 (9th Cir. 1982), citing to *Guglielmi v. Spelling-Goldberg Productions*, 25 Cal. 3d 860, 871-72 (1979). In *Guglielmi*, the California Supreme Court affirmed the dismissal of a claim for misappropriation of likeness through a film shown on television because "[w]hether the publication involved was factual and biographical, or fictional, the right of publicity has not been held to outweigh the value of free expression." *Id.*[11]; *see also, Comedy III Productions, Inc. v. Gary Saderup Inc.*, 25 Cal. 4th 387, 396-97 (2001).

Plaintiff's FAC confirms the public interest in the subject matter of the Film, which addresses a pre-existing public controversy over Plaintiff's relationship with the "hugely successful" music group N.W.A., which is continuing to generate "many millions of dollars of revenue from multiple revenue streams on a global scale" (FAC at ¶ 26), and as to which Plaintiff himself allegedly had collaborated on earlier screenplays and written a book (*id.* at ¶¶ 27-30). Films that "inform and entertain the public with the reproduction of past events, travelogues and biographies," and depict people who were part of an "era that contributed, willingly or unwillingly, to the development of a lifestyle that has become world-famous and celebrated in popular culture," qualify as "public

---

[11]   Although labeled as a concurrence, the California Supreme Court subsequently recognized that a majority of the Justices in *Guglielmi* had joined in Justice Byrd's opinion. *Comedy III Productions*, 25 Cal. 4th at 396, n.7.

LA132449999

1    interest" expression protected by the First Amendment.  *Dora*, 15 Cal. App. 4th at 542;

2    *accord*, *Montana*, 34 Cal. App. 4th at 793.[12]

3         Finally, where, as here, a misappropriation of likeness claim by a public figure is

4    predicated even in part on allegedly false statements, Plaintiff bears the additional burden

5    of pleading and proving "actual malice" as he would in a defamation claim.  *Stewart v.*

6    *Rolling Stone, LLC*, 181 Cal. App. 4th 664, 682 (2010); *William O'Neil & Co., Inc. v.*

7    *Validea.com, Inc.*, 202 F. Supp. 2d 1113, 1118 (2002).  As shown above, Plaintiff has

8    failed to do so here, requiring dismissal of Claim 4 on that basis alone.

9    ### G.    Plaintiff Fails To State A Claim For Intentional Or Negligent

10       ### Interference With Prospective Economic Advantage (Claims 5-6).

11        To state a claim for intentional interference with prospective economic advantage

12   under California law, a plaintiff must allege "(1) an economic relationship between the

13   plaintiff and some third party, with the probability of future economic benefit to the

14   plaintiff; (2) defendant's knowledge of the relationship; (3) the defendant's intentional

15   acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5)

16   economic harm to the plaintiff proximately caused by the defendant's acts."  *O'Connor v.*

17   *Uber Techs., Inc.*, 58 F. Supp. 3d 989, 996 (N.D. Cal. 2014).  The elements are the same

18

19   [12]  Numerous courts outside of California and the Ninth Circuit also have held the First

20   Amendment precludes misappropriation of likeness claims predicated on films and
     "docudramas" depicting the "life stories" of public figures.  *Ruffin-Steinback v. dePasse*,

21   82 F. Supp.2d 723, 730-31 (E.D. Mich. 2000), *affirmed*, 267 F.3d 457, 462 (6th Cir.

22   2001) (misappropriation of likeness and defamation claims by manager of musical group
     "the Temptations" based on a film and television miniseries dismissed because "the right

23   of publicity does not extend to prohibit depictions of a person's life story"); *Seale v.*

24   *Gramercy Pictures*, 949 F. Supp. 331, 335-37 (E.D. Pa. 1996) (dismissing
     misappropriation claim based on depiction in "docudrama" surrounding the Black

25   Panther Party); *Matthews v. Wozencraft*, 15 F.3d 432, 437-39 (5th Cir. 1994) ("the

26   narrative of an individual's life, standing alone, lacks the value of a name or likeness that
     the misappropriation tort protects …"); *Whitehurst v. Showtime Networks, Inc.*, NO. CIV.

27   A 1:08-CV-47, 2009 WL 3052663, at *6-*7 (E.D. Tex. Sep 22, 2009) (dismissing

28   misappropriation claim based on film's depiction of previously highly publicized "life
     story and biographical information").

                                             16

for a claim for negligent interference with prospective economic advantage, except that the plaintiff must also allege that the defendant owed the plaintiff a duty of care, and that the defendant was negligent, rather than intentional, in its conduct. *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 802-805 (1979); *see also Damabeh v. 7-Eleven, Inc.*, NO. 5:12-CV-1739-LHK, 2013 WL 1915867, at *9 (N.D. Cal. May 8, 2013). For both causes of action, the alleged conduct must have been "independently wrongful" to be actionable. *O'Connor*, 58 F. Supp. 3d at 996.

      1.    <u>Plaintiff Has Not Alleged Any Specific Relationships.</u>

Plaintiff has not identified any actual business relationship that was disrupted by Defendants' alleged conduct. Whether a relationship would have resulted in an economic benefit "is necessarily a matter of some uncertainty," and therefore a plaintiff must allege facts to show "the business relationship contained 'the probability of future economic benefit' to the plaintiff." *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 522 (1996) (quoting *Youst v. Longo*, 43 Cal. 3d 64, 71 (1987)). "Courts have held that, in order to state a claim for intentional interference with prospective business advantage, it is essential that the Plaintiff allege facts showing that Defendant interfered with Plaintiff's relationship ***with a particular individual***." *Damabeh*, 2013 WL 1915867, at *10 (emphasis added). The allegation that a defendant interfered with an "as yet unidentified" customer or client will not suffice. *Westside Ctr. Assocs.*, 42 Cal. App.4th at 527.

Plaintiff's claims for interference with prospective economic advantage do not include the "essential" element of identifying a "particular" relationship that was harmed by Defendants' conduct. *Damabeh*, 2013 WL 1915867, at *10. Plaintiff merely concludes, with no supporting facts, that he has an "economic relationship with his clients." FAC at ¶ 82. Where "none of the purported prospective relationships [is] identified," a claim for interference with "prospective business advantage . . . must be dismissed." *UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*, NO. CV143466MMMJPRX, 2015 WL 4606077, at *17 (C.D. Cal. Jun. 22, 2015). The bare

LA132449999

allegation that Defendants interfered with "clients" is insufficient.  *Id.*; *Damabeh*, 2013 WL 1915867, at *10 (same allegations held insufficient to state a claim for negligent interference with economic advantage); *DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1154 (N.D. Cal. 2010).

### 2.    Plaintiff Has Not Plausibly Alleged Defendants' Knowledge.

A plaintiff attempting to state a claim for interference with prospective economic advantage must allege non-conclusory facts showing that defendants knew that their conduct would interfere with the plaintiff's economic relationships, or, in the case of negligent interference, that the defendants should have known that their conduct would interfere.  *F.M. Tarbell Co. v. A & L Partners, Inc.*, NO. CV 10-1589 PSG EX, 2011 WL 1153539, at *4, *5 (C.D. Cal. Mar. 23, 2011).

The FAC does not allege *facts* suggesting that Defendants knew, or should have known, of prospective economic relationships with Plaintiff's undisclosed "clients."

Plaintiff's conclusory allegations—on information and belief—that Defendants "knew" or "should have known" of his "economic relationships" with his clients is insufficient under *Iqbal* and *Twombly*.  FAC at ¶¶ 83, 89.  In *F.M. Tarbell*, the court held that allegations that plaintiffs were "aware of counterclaimants' prospective business advantage," and that the plaintiffs "knew or should have known the interference . . . would cause damage to counterclaimants" did not plausibly allege under *Iqbal* or *Twombly* that the plaintiffs had the requisite knowledge to state a claim for interference with prospective economic advantage.  2011 WL 1153539, at *4, *5.

### 3.    Plaintiff Has Not Alleged That Defendants' Conduct Was The Proximate Cause Of Any Actual Disruption Or Harm.

A plaintiff must allege facts that show it was "'reasonably probable that the prospective economic advantage would have been realized but for the defendant's interference'" to satisfy the proximate causation element of these claims.  *Westside Ctr. Assocs.*, 42 Cal. App. 4th at 522 (quoting *Youst*, 43 Cal. 3d at 71).  An allegation that a

LA132449999

plaintiff was only "about to" enter into a contract or obtain other economic advantages is insufficient. *Wilson v. Loew's Inc.*, 142 Cal. App. 2d 183, 192 (1956).

Here, Plaintiff's allegations of causation are entirely conclusory. FAC at ¶¶ 84, 90 ("Plaintiff is informed and believes … that Defendants' actions have actually disrupted or interfered with these relationships …."). The absence of non-conclusory allegations regarding causation is, by itself, sufficient to dismiss Claims 5-6. *See Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1311-12 (N.D. Cal. 1997) (allegations that Defendant "induced and/or caused customers and potential customers not to purchase video game software and related products from Silicon Knights" and "wrongfully interfere[d] with Silicon Knights' reasonable expectation of trade and business relationships with customers" insufficient to meet causation element of interference claim); *Wilson*, 142 Cal. App. 2d at 185-86, 193-94.

4.   Plaintiff Fails To Allege Independent Wrongfulness.

In addition, Plaintiff cannot satisfy the "independently wrongful act" requirement. *O'Connor*, 58 F. Supp. 3d at 996. As set forth above, Plaintiff fails to state a claim for defamation, trade libel, false light or misappropriation of likeness. Plaintiff's breach of contract claims against certain Defendants (which also fail to state a claim for relief) cannot support a claim for interference with prospective economic advantage against them or other Defendants. *Batts v. Bankers Life & Cas. Co.*, No. C 13-04394 SI, 2014 WL 296925, at *4 (N.D. Cal. Jan. 27, 2014) ("[A] breach of contract cannot constitute the 'wrongful' conduct required for the tort of intentional interference with prospective economic advantage."); *JRS Prods., Inc. v. Matsushita Elec. Corp. of Am.*, 115 Cal. App. 4th 168, 181-82 (2004) (same) (collecting cases), *as modified on denial of reh'g* (Feb. 25, 2004). The absence of any independently wrongful conduct is another ground on which to dismiss Claims 5-6. *See, e.g., Charlson v. DHR Int'l Inc.*, NO. C 14-3041 PJH, 2014 WL 4808851, at *7 (N.D. Cal. Sep. 26, 2014) (dismissing interference claim based on alleged defamatory statements where the plaintiff failed to state claim for defamation).

LA132449999

5.     Plaintiff Does Not Allege That Defendants Owed Him A Duty.

As to Claim 6, "[l]iability for negligent conduct may only be imposed where there is a duty of care owed by the defendant to the plaintiff . . . ." *J'Aire Corp.*, 24 Cal. 3d at 802-04. Plaintiff's claim for negligent interference with prospective economic advantage must be dismissed because nowhere in the FAC does Plaintiff allege that any of the Defendants owed him a duty of care with respect to the Film. Plaintiff alleges only that Defendants "did not act with reasonable care with regard to" alleged "wrongful and deceptive acts." FAC at ¶ 89. Such a conclusory statement is insufficient to allege the requisite duty of care. *See Damabeh*, 2013 WL 1915867, at *9 (allegation that "a duty of care existed between Defendant and Plaintiff by virtue of the franchisor-franchisee relationship" held insufficient to state a claim for negligent interference with prospective economic advantage); *Silicon Knights, Inc.*, 983 F. Supp. at 1313. The allegation of a "wrongful act by a defendant, without more," cannot constitute a duty to a plaintiff for "which a defendant may be liable for negligent interference with prospective economic advantage." *Id.*

H.     **Plaintiff Fails To State A Claim For Breach Of Contract (Settlement Agreement) (Claim 7).**

The premise of this claim is that Defendants Woods-Wright and Comptown Records made "tortious statements" that violated the non-disparagement clause in a Settlement Agreement they entered with Plaintiff, which allegedly prohibits "statements" that "disparage" the parties. FAC at ¶ 94. But the Complaint fails to identify a single statement that these Defendants purportedly made that violated this provision. Instead, Plaintiff generally refers to allegations "above," presumably paragraph 37 of the Complaint, which purports to include a "non-exclusive list of examples of … defamatory statements …." *Id.* at ¶¶ 37, 96. As stated, no "statement" is identified, but rather Plaintiff provides merely his general and subjective interpretations of scenes in the Film. Because Plaintiff fails to allege a statement, he cannot, as a matter of logic or law, state a claim based on a disparaging statement.

20

Even if Plaintiff had alleged the purportedly disparaging "statements" made by these Defendants, the non-disparagement clause in this contract is too vague for the Court to determine whether Woods-Wright or Comptown Records breached it, and is too indefinite to evidence any clear waiver of their First Amendment right to contribute to the Film.  "Under California law, a contract will be enforced if it is sufficiently definite (and this is a question of law) for the court to ascertain the parties' obligations and to determine whether those obligations have been performed or breached." *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 209 (2006).  "If a supposed contract does not provide a basis for determining what obligations the parties have agreed to, and hence does not make a possible determination of whether those agreed obligations have been breached, there is no contract." *Id.*

California courts have recognized that the "term 'disparage' is itself somewhat ambiguous," as is an agreement that merely "prohibits [a party] from disparaging [someone] to any other party." *Vivian v. Labrucherie*, 214 Cal. App. 4th 267, 277 (2013); *see Vasile v. Flagship Fin. Group, LLC*, No. 2:12-CV-02912-KJM, 2014 WL 2700896, at *5 (E.D. Cal. Jun. 13, 2014) (citing *Vivian*, 214 Cal. App. 4th at 277) ("the term 'disparage' is itself somewhat ambiguous").  Here, the alleged non-disparagement clause provides only that the parties "shall not make any statement, directly or indirectly in writing, orally, or in any other form, which disparages in any way the other." FAC at Ex. B at ¶ 21.  These vague terms do not provide the Court with sufficient certainty to enforce a claim for breach.  *See Oorah, Inc. v. Schick*, 552 Fed. Appx. 20, 22-23 (2d Cir. 2014) (non-disparagement agreement that simply stated "we will not write or transmit in any form charges against [plaintiff]" too vague to be enforceable).

Additionally, this vague term cannot demonstrate a knowing waiver of Woods-Wright's or Comptown Records' First Amendment rights in making motion pictures (*See*, fn. 3*, supra*), and, therefore, the clause cannot be applied against them based on any alleged statements in the Film. "Constitutional rights may ordinarily be waived [only] if it can be established by clear and convincing evidence that the waiver is voluntary,

LA132449999

knowing, and intelligent." *Gete v. I.N.S.*, 121 F.3d 1285, 1293 (9th Cir. 1997). "[E]very reasonable presumption [must be construed] against waiver of fundamental constitutional rights." *Schell v. Witek*, 218 F.3d 1017, 1024 (9th Cir. 2000); *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1399-1400 (1999) (holding unenforceable contract prohibiting film producers from using documents relating to a lawsuit) (citing *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 145 (1975)).

## I.   Plaintiff Fails To State A Claim For Breach Of Implied Covenant (Claim 8).

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing must be dismissed because it is entirely duplicative of his Seventh Claim. A "claim for breach of the implied covenant of good faith and fair dealing [must] 'go beyond the statement of a mere contract breach' and not 'rely on the same alleged acts or simply seek the same damages as other relief already claimed in a companion cause of action." *Careau & Co. v. Sec. P. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1394-95 (1990), *as modified on denial of reh'g* (Oct. 31, 2001).

Plaintiff does not allege that Woods-Wright's or Comptown Records did anything to violate the covenant of good faith and fair dealing other than allegedly breaching the Settlement Agreement. *Compare* FAC at ¶¶ 92-97, *with id.* ¶¶ 98-103. Plaintiff's Seventh and Eighth Claims are, therefore, based on the same allegations and "the two are duplicative[;] … the breach of the implied covenant of good faith and fair dealing must give way to the breach of contract claim." *Env. Furniture, Inc. v. Bina*, No. CV 09-7978 PSG JCX, 2010 WL 5060381, at *3 (C.D. Cal. Dec. 6, 2010). "Plaintiff['s] claim for breach of the duties of good faith and fair dealing fails because it is duplicative of Plaintiffs' breach of contract claim." *Alvarez v. Chevron Corp.*, 656 F. 3d 925, 931 n.6 (9th Cir. 2011).

## J.   Plaintiff's Alleged Oral Contract Is Unenforceable (Claim 9).

Plaintiff's alleged oral contract is unenforceable under the Copyright Act of 1976, which provides that copyright ownership "vests initially in the author or authors of the

LA132449999

work." 17 U.S.C. § 201(a).  "As a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection."  *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737-38 (1989) (citing 17 U.S.C. § 102).  The only exception to this rule is in the case of a work made for hire, in which case the copyright vests in "'the employer or other person for whom the work was prepared,' unless there is a written agreement to the contrary."  *Id*. (quoting 17 U.S.C. § 201(b)).  "A 'work made for hire' is:  **(1)** a work prepared by an employee within the scope of his or her employment; or **(2)** a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work … if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire ".  17 U.S.C. § 101.  In all other instances, copyright ownership vests in the author of a work, and the author may only transfer that ownership through "an instrument of conveyance, or a note or memorandum of the transfer, [] in writing and signed by the owner of the rights conveyed …." 17 U.S.C. § 204(a).  Any alleged transfer of a copyright that is not a work made for hire by an employee within the scope of his or her employment and not performed through an executed written instrument is "void."  *Id*.  The Ninth Circuit has interpreted this requirement of a written instrument of transfer as "not only bar[ring] copyright infringement actions ***but also breach of contract claims based on oral agreements***." *Valente-Kritzer Video v. Pinckney*, 881 F.2d 772, 774 (9th Cir. 1989) (emphasis added), *cert. denied,* 493 U.S. 1062 (1990).

　　　　Accordingly, the alleged oral contract with Savidge, Wenkus and Xenon is void. Plaintiff does not allege that these Defendants were his employees, but rather that he "commissioned" them to write screenplays.  Thus, the screenplays could only be Plaintiff's property if the parties had "expressly agree[d] in a written instrument signed by them that the work shall be considered a work made for hire."  17 U.S.C. § 101; *see also* 17 U.S.C. § 204(a) (requiring an executed written instrument to transfer any ownership interest copyright).  Plaintiff admits that no such written instrument exists—

23

the screenplays were the subject of an alleged "oral contract." FAC at ¶ 27. Such a contract, and a claim for its breach, is expressly barred under section 204. *Valente-Kritzer Video*, 881 F.2d at 774; *see Lib. Publications, Inc. v. Med. Economics Co.*, 548 F. Supp. 1231, 1234 (E.D. Pa. 1982) (oral agreement in this context "invalid as a matter of law"), *aff'd sub nom*, *Lib. Publications, Inc. v. Med. Economics Co.*, 714 F.2d 123 (3d Cir. 1983).[2]

## K.   Plaintiff Fails To State A Claim For Breach Of Implied Covenant (Claim 10).

For the same reasons set forth in Section III.I., Plaintiff fails to state a claim for breach of the implied covenant arising from the alleged oral contract. Plaintiff merely concludes that Savidge, Wenkus and Xenon "unfairly interfered with Plaintiff's right to receive the benefits" of the alleged oral contract, but no facts besides the alleged breach of contract. FAC at ¶ 113. The alleged breach of the oral contract is nearly identical to the alleged breach of the covenant of good faith and fair dealing. The claim should be dismissed for this additional reason. *Env. Furniture*, 2010 WL 5060381, at *3.

The invalidity of the alleged oral contract also requires dismissal. "The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract." *Smith v. City and County of San Francisco*, 225 Cal. App. 3d 38, 49 (1990) (citing *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654 (1988)). "'Without a contractual relationship, [plaintiffs] cannot state a cause of action for breach of the implied covenant.'" *Saldate v. Wilshire Credit Corp.*, 268 F.R.D. 87, 105 (E.D. Cal. 2010) (quoting *Smith,* 225 Cal. App. 3d at 49). Because the alleged oral contract is void under the Copyright Act, Plaintiff cannot assert a claim based on the oral contract for breach of the duty of good faith and fair dealing. *See Barkett v. Sentosa*

---

[2] Plaintiff alleges in his FAC that the "oral agreement" was confirmed in "e-mail communications." FAC at ¶ 108. That is irrelevant. Only a "written instrument signed by" the parties will render a non-employee's work a work made for hire. 17 U.S.C. § 101.

LA132449999

*Props. LLC*, No. 1:14-CV-01698-LJO, 2015 WL 502319, at *18 (E.D. Cal. Feb. 5, 2015)

("The absence of a contract claim is also fatal to Plaintiffs' claim for breach of the

implied covenant of good faith and fair dealing.").

### L.   **Excessive "Doe" Defendants Must Be Dismissed.**

Under L.R. 19-1, "[n]o complaint or petition shall be filed that includes more than

ten (10) Doe or fictitiously named parties." The FAC names 100 "Doe" defendants. FAC

¶ 20. Under the Court's Local Rules, Does 11-100 must be dismissed. *See Avila v. Cnty.

of Los Angeles*, CV 14-7999 MMM SS, 2015 WL 846786, at *3 (C.D. Cal. Feb. 26,

2015) (dismissing DOES 11-20 from a complaint under L.R. 19-1).

## IV.   **CONCLUSION**

Based on the foregoing, the motion should be granted in its entirety.

DATED:  February 10, 2016      GREENBERG TRAURIG, LLP


By:  */s/  Jeff E. Scott*
　　　　　　　Jeff E. Scott
Attorneys for Defendants NBCUniversal Media,
LLC, erroneously sued as "NBCUniversal, Inc.;"
F. Gary Gray; O'Shea Jackson Sr., p/k/a Ice Cube;
Andre Young, p/k/a Dr. Dre; The Estate of Eric
Wright, p/k/a Eazy E; Tomica Woods-Wright,
individually and as the personal representative of
The Estate of Eric Wright; Comptown Records,
Inc.; Matt Alvarez; Scott Bernstein; Legendary
Pictures Funding, LLC, erroneously sued as
"Legendary Pictures;" Xenon Pictures, Inc., sued
as "Xenon Pictures, Inc./Xenon Entertainment
Group;" Jonathan Herman; Andrea Berloff; S.
Leigh Savidge; and Alan Wenkus

25

LA132449999