GREENBERG TRAURIG, LLP
JEFF E. SCOTT (SBN 126308)
*ScottJ@gtlaw.com*
VINCENT H. CHIEFFO (SBN 49069)
*ChieffoV@gtlaw.com*
JORDAN D. GROTZINGER (SBN 190166)
*GrotzingerJ@gtlaw.com*
REBEKAH S. GUYON (SBN 291037)
*GuyonR@gtlaw.com*
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Telephone:  310-586-7700; Facsimile:  310-586-7800

Attorneys for Defendants NBCUniversal Media, LLC,
erroneously sued as "NBCUniversal, Inc.;" O'Shea Jackson Sr.,
p/k/a Ice Cube; Andre Young, p/k/a Dr. Dre; The Estate of Eric
Wright, p/k/a Eazy E; Tomica Woods-Wright, individually and
as the personal representative of The Estate of Eric Wright;
Comptown Records, Inc.; Xenon Pictures, Inc., sued as "Xenon
Pictures, Inc./Xenon Entertainment Group;" Jonathan Herman;
Andrea Berloff; S. Leigh Savidge; and Alan Wenkus

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| GERALD E. HELLER, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>NBCUNIVERSAL, INC., et al.,<br><br>Defendants. | CASE NO. 2:15-cv-09631-MWF-KS<br><br>**NOTICE OF MOTION AND MOTION TO STRIKE ALLEGATIONS OF NON-ACTIONABLE CONDUCT IN THE SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(f); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Proposed Order lodged concurrently]<br><br>Date:            June 27, 2016<br>Time:           10:00 a.m.<br>Courtroom:   1600<br>Action Removed:  December 15, 2015 |

LA132591980

TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on June 27, 2016, at 10:00 a.m. in Courtroom 1600 of the above-captioned Court, located at 312 North Spring Street, Los Angeles, California, Defendants NBCUniversal Media, LLC, erroneously sued as "NBCUniversal, Inc.;" O'Shea Jackson Sr., p/k/a Ice Cube; Andre Young, p/k/a Dr. Dre; Tomica Woods-Wright, individually and as the personal representative of The Estate of Eric Wright; Jonathan Herman; Andrea Berloff; S. Leigh Savidge; and Alan Wenkus (collectively "Defendants") will and hereby do move pursuant to Fed. R. Civ. P. 12(f) to strike allegations of non-actionable conduct in the Second Amended Complaint ("SAC").

The allegations Defendants ask the Court to strike are found at pages 7:24-18:28 and 19:1-5.

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the Request for Judicial Notice and the Declaration of Vincent H. Chieffo filed in support of Defendants' concurrent Anti-SLAPP Motion and the documents attached thereto, which are either referenced in the SAC and are not subject to dispute as to authenticity, or are the proper subject of judicial notice by this Court, the concurrent Anti-SLAPP Motion, and on any other matter the Court may properly consider.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on May 18, 2016.

DATED: May 25, 2016                    GREENBERG TRAURIG, LLP

By:   /s/ Jeff E. Scott
      Jeff E. Scott
      Attorneys for Defendants NBCUniversal Media, LLC, erroneously sued as "NBCUniversal, Inc.;" O'Shea Jackson Sr., p/k/a Ice Cube; Andre Young, p/k/a Dr. Dre; The Estate of Eric Wright, p/k/a Eazy E; Tomica Woods-Wright, individually and as the personal representative of The Estate of Eric Wright; Comptown Records, Inc.; Xenon Pictures, Inc., sued as "Xenon Pictures, Inc./Xenon Entertainment Group;" Jonathan Herman; Andrea Berloff; S. Leigh Savidge; and Alan Wenkus

1

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION AND SUMMARY OF MOTION ................................................1

II.    RELEVANT FACTS..................................................................................................1

III.   ARGUMENT.............................................................................................................2

     A.     Rule 12(f) Standards..............................................................................2

     B.     The Court Should Strike All Non-Actionable Matter On Pages 7-18
           And 24. ........................................................................................................3

           1.     Implications On Pages 7, 9, 12 And 14:9-10 .......................3

           2.     Implications On Pages 10 And 14:23-25 ..............................5

           3.     The Implication On Page 13 .......................................................8

           4.     The Implications On Pages 15-16 .............................................9

IV.   CONCLUSION........................................................................................................10

LA132591980

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Federal Cases**

4

*In re 2TheMart.com, Inc. Sec. Litig.*,

5

   114 F. Supp. 2d 955 (C.D. Cal. 2000) ........................................................................2

6

*Dodds v. Am. Broad. Co.*,

7

   145 F.3d 1053 (9th Cir. 1998) ......................................................................3, 6, 8

8

*Fantasy, Inc. v. Fogerty*,

   984 F.2d 1524 (9th Cir. 1993), *rev'd* on other grounds, 510 U.S. 517 (1994)..............2

9

*Knievel v. ESPN*,

10

   393 F.3d 1068 (9th Cir. 2005) ........................................................................7

11

*Masson v. New Yorker Magazine, Inc.*,

   501 U.S. 496 (1991)........................................................................9

12

*Partington v. Bugliosi*,

13

   56 F.3d 1147 (9th Cir. 1995) ........................................................4, 5, 8, 10

14

*Stilts v. Globe Int'l, Inc.*,

   91 F.3d 144 (6th Cir. 1996) ........................................................................4

15

*Survivor Prods. LLC v. Fox Broadcasting Co.*,

16

   No. CV01-3234 LGB, 2001 WL 35829267 (C.D. Cal June 12, 2001)......................2, 3

17

*Thomas v. Los Angeles Times Commc'ns, LLC*,

18

   189 F. Supp. 2d 1005 (C.D. Cal.), *aff'd*, 45 F. App'x. 801 (9th Cir. 2002)..................3

19

*Vess v. Bank of Am., N.A.*,

   No. 10CV920-AJB (WVG). 2012 WL 113748 (S.D. Cal. Jan. 13, 2012)....................2

20

*Whittlestone, Inc. v. Handi-Craft Co.*,

21

   618 F.3d 970 (9th Cir. 2010) ........................................................................2

22

*Yufa v. Met One Instruments, Inc.*,

   No. 1:08-CV-3016-CL, 2012 WL 7188851 (D. Or. Dec. 20, 2012)...........................2

23

**State Cases**

24

*Carver v. Bonds*.

25

   135 Cal. App. 4th 328 (2005) ........................................................................6

26

*J-M Mfg. Co., Inc. v. Phillips & Cohen, LLP*,

27

   No. B256927, 2016 WL 1757286 (Cal. Ct. App. May 2, 2016) ...............................6

28

LA132591980

**Rules**

Federal Rules of Civil Procedure, Rule l2(f) .................................................1, 2

**Constitutional Provisions**

U.S. Constitution, First Amendment ................................................1, 8, 9, 10

LA132591980

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION AND SUMMARY OF MOTION

The Court will only need to adjudicate the merits of this Motion if Defendants' concurrent Anti-SLAPP Motion is denied.  If the Anti-SLAPP Motion is granted, this Motion will be moot.  Therefore, Defendants request that the Court review the Anti-SLAPP Motion first.

The Anti-SLAPP Motion challenges Plaintiff's First Claim for Defamation.  The Defamation Claim is based on alleged implications drawn by Plaintiff from certain quoted dialogue in the Film.  As shown in the Anti-SLAPP Motion, neither the implications nor dialogue is actionable under the First Amendment or the law governing defamation claims.  However, to the extent the Court finds that some of the implications or dialogue potentially are actionable, this Motion requests that the Court strike the remaining implications and dialogue that it finds not to be actionable.  This mechanism will serve Rule 12(f)'s purpose of streamlining this matter for further litigation.

## II.     RELEVANT FACTS

The relevant facts are summarized below and set forth in more detail in the Anti-SLAPP Motion.  In sum, in Plaintiff's third iteration of its Complaint, the Second Amended Complaint ("SAC"), Plaintiff for the first time identifies the scenes in the Film that he claims are defamatory.  The scenes are identified in quotations of dialogue from the Film ("Dialogue"), and preceded by the implications Plaintiff draws from that Dialogue ("Implications").  The Dialogue and Implications are set forth on pages 7-18 of the SAC.

Because the Film depicts in a docudrama decades-old public controversies, Defendants argue in the Anti-SLAPP Motion that the Film—including all challenged scenes—is absolutely protected by the First Amendment.  The Anti-SLAPP Motion then breaks down and analyzes, Implication by Implication and quote by quote, why none of the challenged material is actionable.  To avoid burdening the Court with redundant arguments, Defendants do not repeat those arguments here in full.  Rather, Defendants

1

incorporate them herein by reference and, in the Argument section below, summarize each reason why the Implications and corresponding Dialogue are not actionable.

### III.   ARGUMENT

### A.   Rule 12(f) Standards

Rule 12(f) of the Federal Rules of Civil Procedure allows a court to strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. l2(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial …." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). A district court enjoys broad discretion to grant a motion to strike. *See Vess v. Bank of Am., N.A.*, No. 10CV920-AJB (WVG). 2012 WL 113748, at*12 (S.D. Cal. Jan. 13, 2012) ("[W]hether to grant a motion to strike is within the broad discretion of the district court."); *Yufa v. Met One Instruments, Inc.*, No. 1:08-CV-3016-CL, 2012 WL 7188851, at *2 (D. Or. Dec. 20, 2012) *report and recommendation adopted,* No. 1:08-CV-3016-CL, 2013 WL 663594 (D. Or. Feb. 21, 2013) (same).

Under Rule 12(f), "immaterial matter" has "no essential or important relationship to the claim for relief." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd* on other grounds, 510 U.S. 517 (1994). "'Impertinent' has been defined as allegations that are not responsive or irrelevant to the issues that arise in the action, and which are inadmissible as evidence." *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000). "Scandalous" allegations include those that cast a cruelly derogatory light on a party or other person. *See Survivor Prods. LLC v. Fox Broadcasting  Co.*, No. CV01-3234  LGB (SHx), 2001 WL 35829267, at *3 (C.D. Cal June 12, 2001).

The allegations Defendants seek to strike fall into one or more of the categories proscribed by Rule 12(f), and thus the Court should strike these portions of the SAC.

2

LA132591980

**B.    The Court Should Strike All Non-Actionable Matter On Pages 7-18 And 24.**

As set forth in the Anti-SLAPP Motion, each of the Implications and Dialogue is not actionable for up to four reasons:  (1) the Dialogue does not support the Implications Plaintiff draws; (2) the Dialogue is comprised of expressions of non-actionable opinion; (3) the Implications are not reasonably capable of sustaining defamatory meaning; and (4) the challenged statements are substantially true.  Defendants address each Implication and corresponding Dialogue below, in the order addressed in the Anti-SLAPP Motion, summarize the reasons why none is actionable as more fully discussed in that Motion, and identify by page and line number the underlying allegations that should be stricken.[1]

**1.    Implications On Pages 7, 9, 12 And 14:9-10**

The alleged Implications at pages 7, 9 and 12 are:

- "Heller is the bad-guy or villain in the movie who could not be trusted." (SAC at 7:24-27);
- "Dr. Dre accuses Heller of stealing money and says that Ice Cube was right about him."  (*Id*. at 7:28);
- "Heller is a sleazy manager who took advantage of Defendants Eazy E, Dr. Dre and Ice Cube, effectively, by stealing their money."  (*Id*. at 9:1-3); and
- "Heller induced Dr. Dre to sign an unfavorable contract."  (*Id*. at 12:25-26.)

For the reasons discussed in the Anti-SLAPP Motion, the first three Implications, to the effect that Plaintiff was "stealing money" from Dr. Dre and Ice Cube, are not reasonably supported by the corresponding Dialogue at pages 8:1-28; 9:6-28; 10:1-6, 17-28; 11:1-28 and 12:1-23.[2]  *See Dodds v. Am. Broad. Co.*, 145 F.3d 1053, 1066 (9th Cir. 1998); *accord, Thomas v. Los Angeles Times Commc'ns, LLC*, 189 F. Supp. 2d 1005, 1013 (C.D. Cal.), *aff'd*, 45 F. App'x. 801 (9th Cir. 2002), (affirming dismissal of claim

---

[1]  This information also will be reflected in the accompanying Proposed Order.

[2]  Attached as Exhibit 22 to the Chieffo Declaration in support of the Anti-SLAPP Motion is a chart providing a side-by-side comparison of each set of alleged Implications with the quoted Dialogue purportedly supporting that set of putative Implications, in the order in which they are analyzed in the Anti-SLAPP Motion.

LA132591980

1    that the defendant had implied, although not expressly stated, the plaintiff had engaged in

2    criminal activity and a cover-up of his activities, because "we do not believe that a

3    reasonable fact finder could find that [defendant's] statements conveyed any such

4    implication").  Because Plaintiff cannot satisfy his burden of showing that the quoted

5    Dialogue reasonably implies he was stealing money, then these three alleged Implications

6    are all non-actionable opinions about Plaintiff's performance as a business manager:  *i.e.*,

7    Plaintiff "is the bad-guy or villain in the movie," "cannot be trusted," "is a sleazy

8    manager," and "took advantage of Defendants."  These Implications are not actionable

9    because they reflect only "subjective evaluations" of a professional's performance and

10   are "not susceptible of being verified as true or false."  *Partington v. Bugliosi*, 56 F.3d

11   1147, 1158 (9th Cir. 1995).

12        Similarly, the alleged Implication on page 12 that Plaintiff "induced Dr. Dre to

13   sign an unfavorable contract" is an opinion not provably true or false.  The allegedly

14   supporting Dialogue at page 13:1-13 reflects a classic difference of opinion over whether

15   a contract is or is not favorable to one contracting party or the other.  Such statements "do

16   not imply the assertion of an objective fact" and "are not capable of being proved true or

17   false."  *Partington*, 56 F.3d at 1153.

18        In addition, the Dialogue on pages 8-12 allegedly supporting the Implications at

19   pages 7 and 9 (depicting Ice Cube and Dr. Dre articulating their *accusations of*

20   "sleaziness" and stealing) is at least substantially true.  Plaintiff admits in his Memoir that

21   Ice Cube and Dr. Dre were constantly complaining about what they were getting paid,

22   and had "lied publicly" that Plaintiff "had stolen money from them" and "cheated them."

23   (First RJN Exh. 2 [Memoir, at pp. 9, 157-58, 180-81,187-88, 192, 292, 294].)[3]  *See Stilts*

24   *v. Globe Int'l, Inc.*, 91 F.3d 144 (6th Cir. 1996) (article was as a matter of law

25   "substantially true" because a reasonable reader would understand the article was

26   describing *an undisputed "controversy that exists between [the famous music group] the*

27   _____

28   [3]  "First RJN" refers to the first Request for Judicial Notice filed in support of
     Defendants' initial Anti-SLAPP Motion (Dkt. No. 21-8).

                                              4

*Judds and [their manager] Stilts concerning their mutual business affairs and the hard feelings between the Judds and Stilts*") (emphasis added).

Finally, the alleged Implication at page 14:9-10 (about Plaintiff enjoying "lobster brunches" while members of N.W.A. ate fast food), and Dialogue at page 14:12-22, are classic protected hyperbole and dramatization, particularly in the context of a docudrama like the Film. *Partington*, 56 F.3d at 1155 ("Docudramas, as their names suggests, often rely heavily upon dramatic interpretations of events and dialogue filled with rhetorical flourishes in order to capture and maintain the interest of their audience.  We believe that viewers in this case would be sufficiently familiar with this genre to avoid assuming that all statements within them represent assertions of verifiable facts.").

Accordingly, the Implications and corresponding Dialogue at pages 7:24-28; 8:1-28; 9:1-28; 10:1-5, 17-28; 11:1-28; 12:1-23, 13:1-13; 14:9-10 and 14:22 should be stricken.

## 2.   <u>Implications On Pages 10 And 14:23-25</u>

These are:

- "Heller steered Dr. Dre and Ice Cube away from hiring an attorney to review any contracts so they could never get paid;" (SAC at 10:7-9);

- "Heller made sure he was paid more than his fair share to the detriment of the other members of N.W.A.;" (*Id*. at 10:9-11);

- "Heller did not pay numerous bills and expenses of N.W.A., rather, he paid himself first;" (*Id*. at 10:11-13);

- "Heller intentionally kept the members of N.W.A. in the dark regarding finances;" (*Id*. at 10:13-14);

- "Heller intentionally withheld a $75,000 check from Ice Cube that rightfully belonged to Ice Cube;" (*Id*. at 10:14-16) and

- Ice Cube states in an interview at his home that the Jewish Defense League should not condone Heller's behavior in trying to get him to sign a contract without his attorney's review.  (*Id*. at 14:23-26).

5

LA132591980

1    The second, third and fourth of the six alleged Implications quoted immediately

2    above (about Plaintiff paying himself first, or more, and "intentionally" keeping N.W.A.

3    "in the dark regarding finances") cannot be reasonably inferred from the quoted

4    Dialogue on pages 10-12 of the SAC.  None of those words says or implies anything at

5    all about payments to Plaintiff, let alone whether those payments were for "more than

6    his fair share."  Nor is there any suggestion that Plaintiff *intentionally* kept N.W.A. "in

7    the dark."  The Dialogue quoted in lines 1-8 on page 12 of the SAC depicts the Film's

8    Heller character rebuking Ice Cube for ignoring that N.W.A.'s expenses are paid by

9    Ruthless.  Such a rebuke by the Heller character is inconsistent with Plaintiff having

10   "intentionally" hidden from Ice Cube what the Heller character tells Ice Cube he should

11   already know.  Therefore, the alleged Implication is not "reasonably capable of

12   sustaining that meaning" attributed to the quoted Dialogue.  *Dodds*, 145 F.3d at 1063.

13   As to the first and sixth of these Implications (regarding Plaintiff allegedly

14   steering Dr. Dre and Ice Cube away from attorneys), the Dialogue relied upon by

15   Plaintiff for these alleged Implications, at pages 10-12 of the SAC, consists solely of

16   statements by or to Ice Cube, making no reference at all to Dr. Dre.  Thus, the Dialogue

17   supports no implication that Plaintiff steered Dr. Dre away from hiring an attorney.

18   As to Ice Cube, Plaintiff admits that, *unlike* Dr. Dre, Plaintiff never represented

19   Ice Cube (SAC at ¶¶ 19-20).[4]  Therefore, Plaintiff owed no ethical or other obligation to

---

20   [4] Even if this Dialogue between the Ice Cube and Heller characters somehow implied

21   Plaintiff had also tried to steer Dr. Dre away from hiring an attorney (and it does not),

22   any suggestion of impropriety would result from Plaintiff's indisputable conflict of

23   interest in negotiating with Dr. Dre as Ruthless' manager at the same time Plaintiff

24   admits he also was representing Dr. Dre as his manager – a relationship Plaintiff admits

     he did ***not*** have with Ice Cube.  (SAC at ¶¶ 19-20; First RJN Exh. 2 [Memoir, at p. 22].)

25   Any defamatory implication from those undisputed non-actionable disclosed facts cannot

     itself be actionable.  *Dodds*, 145 F.3d at 1067 ("an opinion based on an implication

26   arising from disclosed facts is not actionable when the disclosed facts themselves are not

     actionable"); *J-M Mfg. Co., Inc. v. Phillips & Cohen, LLP*, No. B256927, 2016 WL

27   1757286, at *7 (Cal. Ct. App. May 2, 2016) ("statement is not considered false unless it

     would have a different effect on the mind of the reader from that which the truth would

28   have produced"), *quoting, Carver v. Bonds*. 135 Cal. App. 4th 328, 344-45 (2005).

6

represent the interests of Ice Cube in this negotiation, and it is not defamatory to say or imply that the manager of Ruthless discouraged Ice Cube from hiring an attorney to negotiate against him.  Accordingly, the only even potentially defamatory aspect of this alleged Implication would be the opinion that Plaintiff's subjective motive in discouraging Ice Cube from hiring an attorney was "so they could never get paid." However, nowhere in the Dialogue from the contract scene between the Ice Cube and Heller characters is there any statement or suggestion that Plaintiff's motive in steering Ice Cube away from hiring an attorney was to prevent him from getting paid.  He only tells Ice Cube that attorneys "are paid to make trouble.  They're gonna create problems where no problems exist."  (SAC at 10:27-28 and 11:1-2.)  Many, if not most, viewers of the Film would probably agree with that, and certainly would not believe such Dialogue defames the reputation of Ruthless' manager.  *Knievel v. ESPN*, 393 F.3d 1068, 1074 (9th Cir. 2005) ("courts must interpret that statement from the standpoint of the average reader").[5]  Moreover, the quoted Dialogue plainly shows that Ice Cube declined to sign without having his attorney review it, so there is no suggestion that he signed anything without advice of counsel.

The final Implication analyzed here (the fifth bullet point) is that "Heller intentionally withheld a $75,000 check from Ice Cube that rightfully belonged to him." However, the corresponding Dialogue from the contract scene with the Heller and Ice Cube characters only reflects the Heller character telling Ice Cube that money that would be contractually owed to him under a proposed contract will be paid to him as soon as he signs that contract:  "Sign the contract, then all this money is yours."  (SAC at 11:14-15.) Nowhere does the Heller character threaten that Ice Cube will never receive any money at all from Ruthless if he does not sign that contract, and Plaintiff does not allege

---

[5]  The Heller character also tells Ice Cube in this Dialogue that Ice Cube is the only member of N.W.A. who had not signed a contract, but Plaintiff does not and cannot allege that statement to be false or defamatory.  (First RJN Exh. 2 [Memoir, at p. 138].)

otherwise.[6]  Ice Cube's demand, "Give me my money, Jerry," after insisting "I earned that money" (SAC at 11:17-18 and 27), only reflects Ice Cube's contrary opinion that the $75,000 "rightfully belongs to him" *now*, irrespective of whether he signs the contract, and that he should therefore immediately be paid the full $75,000 even if he lacked that contractual right.

Moreover, this Dialogue is substantially true, as Plaintiff concedes:  "Ruthless paid out seventy-five-thousand-dollar checks to each band member, ***contingent on them officially signing with the label.***  Everyone signed except Cube."  (First RJN Exh. 2 [Memoir, at p. 138]) (emphasis added).

In any event, this dramatization of an ambiguous controversial dispute between two public figures is protected speech under the First Amendment, because when producers of docudramas are " giving an account of inherently ambiguous materials or subject matter, the First Amendment requires that the courts allow latitude for interpretation." *Partington*, 56 F.3d at 1154.

Thus, the alleged Implications and allegedly supporting Dialogue at pages 10:7-28; 11:1-28; 12:1-23; 14:23-26 and 15:1-15 should be stricken.

**3.    The Implication On Page 13**

Here, Plaintiff alleges:  "Heller abandoned Dr. Dre and the D.O.C. after his car accident, but Suge Knight stepped in to take care of them[.]" (SAC at 13:14-16.) However, the quoted Dialogue neither says nor reasonably implies anything like that. (*Id*. at 13:19-14:-8) (*e.g.*, "Where Eazy and Jerry?," and receiving the response, "How the fuck should I know?").  It is not reasonable to imply from this Dialogue that "Heller abandoned Dr. Dre and the D.O.C. after his car accident." *Dodds*, 145 F.3d at 1063.

Similarly, Dr. Dre asking Suge Knight if his "people" could take a look at Dr. Dre's paperwork only after Suge Knight repeatedly asks him what he thinks of Plaintiff,

---

[6]  Plaintiff admits that Ruthless entered into an exclusive  recording contract and "a series of exclusive music publishing contracts with Defendants Eazy E, Dr. Dre and Ice Cube." (SAC at ¶¶ 20, 21.)

1    and if he is "cool with" his "paperwork," cannot reasonably imply that Suge Knight

2    "stepped in to take care of them."  It just as logically suggests that a rival record company

3    executive (very unfavorably depicted in the Film) was trying to break up N.W.A. by

4    moving Dr. Dre to his record company.  Moreover, Plaintiff contends that Suge Knight

5    was the D.O.C.'s "main guy" who "broke up the black Beatles, N.W.A.," and that Dr.

6    Dre left N.W.A., and came under Knight's "exclusive control," after the D.O.C.

7    repeatedly told Dr. Dre that Ruthless, managed by Plaintiff, was "ripping him off."  (First

8    RJN Exh. 2 [Memoir, at pp. 6, 24-25, 187-88, 190-92, 203-05].)  The admitted

9    substantial truth of this alleged Implication precludes it from being actionable

10   defamation.  *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516-17 (1991).

11        Accordingly, the alleged Implication and corresponding Dialogue at pages 13:14-

12   28 and 14:1-8 should be stricken.

13        **4.    The Implications On Pages 15-16**

14        Plaintiff's final two alleged Implications are that "Tomika [*sic*] Woods-Wright

15   tells Eazy-E that Heller took advantage of Heller [*sic*] and left him with 2-3 years of

16   unpaid bills" and that "Eazy-E fires Heller in Heller's kitchen after accusing him of

17   illegal activity, and Heller says in his defense that Eazy-E screwed things up and that

18   Heller took actions to cover his own (rear end)."  (SAC at 15, 16.)  As explained in the

19   Anti-SLAPP Motion, these are controversies made public years ago, in prior litigation

20   and Plaintiff's Memoir, the dramatization of which in the Film, a docudrama, is

21   absolutely protected by the First Amendment.

22        Regardless of whether Plaintiff did or did not mismanage Ruthless as alleged in

23   the Woods-Wright Complaint and in Eazy E's hand-written memo to Plaintiff (attached

24   to Plaintiff's 1997 Complaint),[7] at least two points cannot be genuinely disputed:  (i)

25   both Plaintiff and Eazy E's Estate acknowledged in their lawsuits that Plaintiff's contract

26

27   _____

28   [7]  These two Complaints are attached to the First RJN as Exhibits 3 (1997 Complaint)
     and 4 (Woods-Wright Complaint).

1   was terminated in 1995 before Eazy E died[8]; and (ii) each side publicly accused the other

2   of malfeasance.  Regardless of whether the admitted termination of Plaintiff's services in

3   fact occurred in the venue and in the manner as depicted in the Film, the Film's

4   dramatization of the undisputed termination of Plaintiff taking place in a kitchen, and of

5   the admitted public accusations of fault and wrongdoing exchanged between public

6   figures, is not actionable:  "When, as here, an author writing about a controversial

7   occurrence fairly describes the general events involved and offers his personal

8   perspective about some of its ambiguities and disputed facts, his statements should

9   generally be protected by the First Amendment."  *Partington*, 56 F.3d at 1154.

10      Thus, the Implications and corresponding Dialogue at 15:16-28 and 16:1-18:13

11  should be stricken.

## IV.   <u>CONCLUSION</u>

13      Based on the foregoing, and in the event the Court denies the Anti-SLAPP Motion,

14  the Court should strike the material identified above that it finds to be non-actionable.

15  The Court should also strike the corresponding matter at pages 18:14-28 and 19:1-5,

16  which frames the alleged Implications as "a list of facts" Defendants allegedly

17  misrepresented to defame Plaintiff.[9]

18  DATED:  May 25, 2016                    GREENBERG TRAURIG, LLP

19                              By:   */s/  Jeff E. Scott*
                                    _____
20                                        Jeff E. Scott
                                    Attorneys for Defendants NBCUniversal Media,
21                                  LLC, erroneously sued as "NBCUniversal, Inc.;"
                                    O'Shea Jackson Sr., p/k/a Ice Cube; Andre Young,
22                                  p/k/a Dr. Dre; The Estate of Eric Wright, p/k/a
                                    Eazy E; Tomica Woods-Wright, individually and
23                                  as the personal representative of The Estate of Eric

---

[8]  First RJN Exh. 3 (1997 Complaint, at ¶ 65) and First RJN Exh. 4 (Woods-Wright Complaint, at ¶12).

[9]  For example, if the Court finds that the alleged Implication that Plaintiff "stole" money is not actionable, the Court should strike the listed "fact" that Plaintiff "did not steal money …," etc.  This matter also will be listed in the accompanying Proposed Order.

10

1    Wright; Comptown Records, Inc.; Xenon Pictures,
2    Inc., sued as "Xenon Pictures, Inc./Xenon
     Entertainment Group;" Jonathan Herman; Andrea
3    Berloff; S. Leigh Savidge; and Alan Wenkus
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LA132591980