UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV-15-09631-MWF-KS  Date: June 29, 2016
Title: Gerald E. Heller -v- NBCUniversal, Inc., et al.

Present: The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None Present | None Present |

**Proceedings (In Chambers):** ORDER RE DEFENDANTS' MOTIONS TO STRIKE AND PLAINTIFF'S MOTION FOR DISCOVERY [40] [43] [48]

Three Motions are before the Court. Two of the three are Motions to Strike under California Code of Civil Procedure Section 425.16 and Rule 12(f) of Federal Rules of Civil Procedure, filed by Defendants on May 25, 2016. (Motion to Strike Claim 1 of the Second Amended Complaint Pursuant to Cal. Civ. Proc. Code § 425.16 ("Anti-SLAPP Motion"; Docket No. 40); Motion to Strike Allegations of Non-Actionable Conduct ("Rule 12(f) Motion"; Docket No. 43)). Plaintiff submitted Oppositions to both Motions on June 7, 2016, and filed a Motion for Discovery under Code of Civil Procedure Section 425.16(g) ("Motion for Discovery") on the same day. (Docket Nos. 46, 47, 48). Defendants filed Replies in support of their Motions on June 14, 2016, addressing the arguments raised in Plaintiff's Motion for Discovery. (Docket Nos. 50, 51). The Court reviewed and considered the papers filed on all three Motions, and held a hearing on **June 27, 2016**.

Defendants bring the Anti-SLAPP Motion to challenge the legal and evidentiary sufficiency of Plaintiff's defamation claim, which is based on the recent blockbuster film *Straight Outta Compton* (the "Film"). The Court agrees with Defendants that virtually all implications Plaintiff draws from the Film are not actionable. Those implications constitute Defendants' opinions, are unsupported by the scenes and dialogue of the Film, or are derived from depictions of real public disputes.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-09631-MWF-KS                              Date:  June 29, 2016
Title:     Gerald E. Heller -v- NBCUniversal, Inc., et al.

But one implication is actionable.  The Film arguably portrays Plaintiff as an exploitative record label manager who attempted to take advantage of an unsophisticated artist by discouraging him from retaining an attorney during contract negotiations.  An average viewer of the Film could interpret that depiction as defamatory.  Contrary to Defendants' contentions at the hearing, moreover, nothing in the record indicates that the depiction is "substantially true."

But while Plaintiff's defamation claim is legally sufficient in this limited respect, it could well fail due to the absence of evidence showing that Defendants made the actionable implication with actual malice.  It is well established, however, that the Court must provide Plaintiff an opportunity to conduct discovery before dismissing his claim for lack of evidentiary support.  Defendants' Anti-SLAPP Motion thus cannot be fully adjudicated at this time.

Accordingly, the Court rules as follows:

- The Anti-SLAPP Motion and the Rule 12(f) Motion are **GRANTED** in all respects except as to the portions of the Film dealing with Plaintiff's alleged attempt to steer Ice Cube away from retaining an attorney to review a proposed recording agreement.

- The Court **RESERVES** its ruling on the only legally sufficient implication alleged in the Second Amended Complaint until after Plaintiff conducts appropriate discovery.

- The Discovery Motion is **GRANTED** only as to the following issue: whether Defendants acted with actual malice when they made the implication that Plaintiff discouraged Ice Cube from hiring a lawyer during contract negotiations.  The parties are to meet and confer regarding a proposed discovery plan.  By no later than **July 11, 2016**, the parties are to submit a Joint Report setting forth (1) the types of discovery to be conducted; (2) the identities of the persons from whom discovery is sought; and (3) a discovery timeline.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV-15-09631-MWF-KS  Date: June 29, 2016
Title: Gerald E. Heller -*v*- NBCUniversal, Inc., et al.

- The parties are to make all reasonable efforts to agree on a proposed plan. If the parties fail to do so, they shall set forth their respective positions in the Joint Report. Argument must limited to **three pages** per side.

- Once the Court receives the parties' Joint Report, it will issue an Order to Show Cause as to why Plaintiff's defamation should not be dismissed. The Order to Show Cause will adjudicate any disputes related to the discovery plan and set forth the briefing schedule on the issue of actual malice.

I. **BACKGROUND**

Plaintiff Gerald Heller is a successful business professional who managed a popular music group known as N.W.A. (Second Amended Complaint ("SAC") ¶¶ 18-22 (Docket No. 37)). The formation and ultimate disbandment of N.W.A. is a story that has captivated the public's interest for decades. The story concerns N.W.A.'s popularization of "gangster rap," the sudden death of the group's co-founder Eric Wright, and the tumultuous relationship between Plaintiff and N.W.A. members. (*See* Declaration of Vincent H. Chieffo ("Chieffo Decl."), Ex. 2 (Docket No. 21-1)). Controversies surrounding the group have spawned rap songs, lawsuits, and even a memoir that Plaintiff authored to tell "his truth" about the group's internal frictions. (*Id.*; SAC, Ex. B). This action is but the latest chapter in the N.W.A. saga.

Plaintiff's claims arise out of Defendants' production and release of the Film. (Chieffo Decl., Ex. 21 (Docket No. 40-2)). The Film follows the lives of Eric Wright ("Eazy E"), Andre Young ("Dr. Dre"), and O'Shea Jackson ("Ice Cube"), among others, during the rise and fall of N.W.A. (*Id.*). Although the Film depicts historical facts, it is a "docudrama" that dramatizes some of the transpired events for entertainment purposes. (*Id.*). The Film gained instant success around the globe and quickly became one of the highest-grossing docudramas ever produced. (SAC ¶ 37).

In the Film, Plaintiff is portrayed by a character named "Jerry Heller." (*Id.* ¶ 29). The portrayal, according to Plaintiff, is exceptionally negative due to numerous

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV-15-09631-MWF-KS          Date: June 29, 2016
Title:    Gerald E. Heller -*v*- NBCUniversal, Inc., et al.

false statements regarding Plaintiff's management of N.W.A. (*Id.* ¶ 31). In Plaintiff's view, Jerry Heller is depicted as a villain who engaged in unethical and criminal behavior to take advantage of N.W.A. members. (*Id.* ¶¶ 32-33). Such misrepresentations, Plaintiff alleges, have harmed his professional reputation and ridiculed him in the eyes of the public. (*Id.* ¶ 31). Plaintiff thus asserts a claim for defamation against the credited producers of the film (which include former N.W.A. members) to recover over $35 million in damages. (*Id.* ¶¶ 38-51, Prayer for Relief at 26).

The primary issue before the Court is whether Plaintiff's defamation claim should be dismissed at this early stage under California Code of Civil Procedure section 425.16—the anti-SLAPP statute. (Anti-SLAPP Motion at 1-2). If the Court does not dismiss the claim in its entirety, Defendants argue, it should at least strike non-actionable allegations of defamatory conduct under Rule 12(f) of the Federal Rules of Civil Procedure. (Rule 12(f) Motion at 1). Plaintiff opposes both the Anti-SLAPP Motion and the Rule 12(f) Motion, and requests leave to conduct discovery in support of his claims. (Discovery Motion at 1-6). The Court examines the parties' contentions in turn, beginning with those raised on the Anti-SLAPP Motion and the Rule 12(f) Motion.

## II.   DISCUSSION

The anti-SLAPP statute "was enacted to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Metabolife Int'l v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001). Motions brought under the statute are evaluated in two steps:

First, the movant must make a threshold showing that the acts giving rise to the plaintiff's claim were in furtherance of the right of petition or free speech. *See, e.g.*, *Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010) (applying California's anti-SLAPP law to claims involving greeting cards that utilized a public figure's likeness). The Court already determined that Plaintiff's defamation claim implicates Defendants' first amendment rights. (*See* Order Re Defendants' Motions to Dismiss

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-09631-MWF-KS					Date:  June 29, 2016
Title:	Gerald E. Heller -v- NBCUniversal, Inc., et al.

and Strike at 15-16 (Docket No. 32)).  The parties present no reasons to revisit that ruling here.

Instead, the issues raised on this Anti-SLAPP Motion concern solely the second step of the inquiry:  whether Plaintiff has established a reasonable probability of prevailing on the challenged claim.  This burden is satisfied if the claim is (1) legally sufficient and (2) substantiated with adequate evidence.  *See Navellier v. Sletten*, 29 Cal. 4th 82, 88–89, 124 Cal. Rptr. 2d 530 (2002) ("[I]n order to establish the requisite probability of prevailing (§ 425.16, subd. (b)(1)), the [nonmovant] need only have stated and substantiated a legally sufficient claim.") (citation and quotation omitted).  If the nonmovant fails to meet either of two requirements, his claim is subject to immediate dismissal.  *Id.*

The legal sufficiency of a claim is examined under the familiar standards of Rule 8 and 12(b)(6).  *See Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 982 (C.D. Cal. 1999) ("When a federal court is presented with [an anti-SLAPP motion that challenges the legal sufficiency of the plaintiff's claims], it must decide the motion in a manner that complies with the standards set by Federal Rules 8 and 12.").  In other words, a claim is considered legally sufficient when the allegations, viewed in light most favorable to Plaintiff, are "plausible on [their] face."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Whether the claim is substantiated with sufficient evidence, however, involves a more nuanced inquiry similar to that undertaken on a motion for summary judgment.  *Metabolife*, 264 F.3d at 840.  Before dismissing a claim on this ground, federal courts must provide the plaintiff some opportunity to conduct relevant discovery.  *Id.* at 845 (holding that "the district court erred in not allowing . . . discovery because the discovery-limiting aspects of the anti-SLAPP statute conflict with Federal Rule of Civil Procedure 56.").

Defendants focus their challenge primarily on the legal sufficiency of Plaintiff's allegations.  The Court will therefore determine whether those allegations are actionable before considering whether any discovery is necessary to evaluate the evidentiary strength of Plaintiff's claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-09631-MWF-KS                              Date:  June 29, 2016
Title:        Gerald E. Heller -v- NBCUniversal, Inc., et al.

### A.  Legal Sufficiency of Plaintiff's Allegations

The SAC lists nine scenes from the Film that have allegedly defamed Plaintiff through false implications.  (SAC ¶ 32).  Although "defamation by implication" is a viable theory of liability in California, *see Metabolife*, 264 F.3d at 854, Plaintiff must meet the following hurdles before the alleged implications can be deemed actionable:

*First*, Plaintiff must show that his interpretation of the dialogue quoted from the Film is reasonable.  The Ninth Circuit has made clear that "a plaintiff may not construct an actionable statement by reading whatever implication it wishes into the defendants' words."  *Id.*  "Whether published material is reasonably susceptible of an interpretation which implies a provably false assertion of fact—the dispositive question in a defamation action—is a question of law for the court."  *Id.* (internal quotations and citation omitted).

*Second*, the implications drawn from the dialogue must convey defamatory facts, not opinions.  As the Ninth Circuit has explained, "[I]n reviewing a defamation claim, a court must ask as a threshold matter whether a reasonable factfinder could conclude that the contested statement implies an assertion of objective fact.  If the answer is no, the claim is foreclosed by the First Amendment."  *See Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995) (internal quotation marks and alterations omitted).  Three factors guide this inquiry:  (1) whether the "general tenor" of the Film negates the impression that Defendants were asserting objective facts; (2) whether Defendants used hyperbolic language; and (3) whether the challenged implication could be proven either true or false.  *Id.*

*Third*, the challenged implications must not be "substantially true."  *See Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 697, 142 Cal. Rptr. 3d 40 (2012) ("[T]he law does not require [the defendant] to justify the literal truth of every word of the allegedly defamatory content . . . .  It is sufficient if the defendant proves true the substance of the charge, irrespective of slight inaccuracy in the details, so long as the imputation is substantially true so as to justify the 'gist or sting' of the remark.") (internal quotation marks and citation omitted).  As the U.S. Supreme Court put it,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-09631-MWF-KS				Date:  June 29, 2016
Title:	Gerald E. Heller -v- NBCUniversal, Inc., et al.

"[T]he statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516-17 (1991).

*Finally*, Plaintiff must show that the identified implications could be reasonably deemed defamatory. A statement is defamatory under California law if it injures or disparages the victim's reputation. *See Gilbert v. Sykes*, 147 Cal. App. 4th 13, 27, 53 Cal. Rptr. 3d 752 (2007) ("Defamation is an invasion of the interest in reputation.") (citation omitted); *Truck Ins. Exch. v. Bennett*, 53 Cal. App. 4th 75, 85, 61 Cal. Rptr. 2d 497 (1997) ("[D]efamation invades the interest in personal or professional reputation and good name."). Courts must determine whether a statement is capable of sustaining a defamatory meaning "from the standpoint of the average reader, judging the statement not in isolation, but within the context in which it is made." *See Knievel v. ESPN*, 393 F.3d 1068, 1074 (9th Cir. 2005) (internal quotation marks and citation omitted).

With these principles in mind, the Court turns to the specific implications on which Plaintiff bases his claim.

### 1.   Alleged Implications of Criminal and Unethical Conduct

Plaintiff alleges that the Film portrays him as a "thief" and a "criminal" who exploited N.W.A. members for his own financial gain. (Opposition to Anti-SLAPP Motion at 12). To be more specific, Plaintiff draws the following implications from the Film's contents:

- "Heller is the bad-guy or villain in the movie who could not be trusted."

- "Dr. Dre accuses Heller of stealing money and says that Ice Cube was right about him."

- "Heller is a sleazy manager who took advantage of Defendants Eazy E, Dr. Dre, and Ice Cube, effectively, by stealing their money."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV-15-09631-MWF-KS            Date: June 29, 2016
Title:      Gerald E. Heller -v- NBCUniversal, Inc., et al.

- "Heller induced Dr. Dre to sign an unfavorable contract."

- "Heller made sure he was paid more than his fair share to the detriment of the other members of N.W.A."

- "Heller intentionally withheld a $75,000 check from Ice Cube that rightfully belonged to Ice Cube."

- "Heller did not pay numerous bills and expenses of N.W.A., rather, he paid himself first."

- "Heller intentionally kept the members of N.W.A. in the dark regarding finances."

(*Id.* ¶ 32).

The scenes transcribed in the SAC, however, do not support most of these alleged implications. (*See id.*). Consider the following dialogue on which Plaintiff relies:

Scene A: Heller attempts to convince Ice Cube to sign a recording agreement with Ruthless Records in exchange for $75,000:

    *Ice Cube*: Jerry, you know I don't know what none of this legal shit mean. Alright? None of us do. So we're going to need a lawyer before we sign anything.

    *Heller*: Everybody else has already signed. I thought you knew this. You're the only one who hasn't. There is also this [holding up a check]. $75,000. Sign the contract, and all this money is yours.

    *Ice Cube*: That's my money anyway, Jerry. I earned that money. . . . Give me my money, Jerry.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV-15-09631-MWF-KS                  Date: June 29, 2016
Title:     Gerald E. Heller -v- NBCUniversal, Inc., et al.

---

        *Heller*:     How the hell do you think this works? How the hell do you think all of this gets paid for? The hotel rooms, the tour buses, security, the parties, all this shit? How do you think it gets paid for? You think it's free."

        . . .

        *Ice Cube*:    [Throws unsigned contract to Heller] Alright Jerry, I'm out.

Scene B:   Ice Cube, who is contemplating leaving N.W.A., tells Dr. Dre, "I'd rather be broke than get fucked. I told you not to sign that shit [contract with Heller], Dre. . . . Ya, I'm through with the bullshit. Eazy put everything on Jerry. Jerry put everything on Eazy. It's a two-man show up there. Ain't no fuckin' group."

Scene C:   Suge Knight, Heller's competitor who is portrayed negatively in the Film, stops Dr. Dre to tell him that his contract with Ruthless Records "didn't look good." Knight offers to help Dr. Dre.

Scene D:   Exasperated Dr. Dre tells Eazy E, "I know you don't like hearing this shit but it's about Jerry. We gotta get rid of that muthafucker, E. There's some real shit man. And the shit been happening since the beginning. I had some people look into this. I ain't been getting my fair share. Cube was right fool. E, look at the papers man and you'll see what I'm talkin about. . . . We didn't make it cuz of Jerry, we made it because our shit is dope . . . we just can't be fuckin with him no more."

(*Id.*).

    Nothing in any of the quoted scenes implies that Plaintiff stole money from N.W.A. While Plaintiff is correct that the Film depicts Heller withholding $75,000 from Ice Cube, any reasonable viewer would understand that Ice Cube was not

---

**CIVIL MINUTES—GENERAL**                                9

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-09631-MWF-KS                                Date:  June 29, 2016
Title:      Gerald E. Heller -v- NBCUniversal, Inc., et al.

contractually entitled to payment.  Indeed, the Film emphasizes in numerous scenes that Ice Cube was the only N.W.A. member who refused to enter into a recording agreement with Ruthless Records.  True enough, the rapper may have believed that he "earned" the money by participating in N.W.A.  But it is simply not reasonable to interpret the Film as implying that Plaintiff committed some crime by withholding the $75,000 payment.

Contrary to Plaintiff's allegations, moreover, the quoted dialogue does not suggest that Plaintiff failed to cover N.W.A.'s expenses, that he paid himself before paying others, or that he intentionally kept N.W.A. members "in the dark" regarding group finances.  In fact, the Film implies just the opposite.  Heller's colloquy with Ice Cube indicates both that Plaintiff did pay N.W.A.'s expenses *and* that Ice Cube was wrong in failing to recognize that obvious fact.  No reasonable viewer could therefore conclude, as Plaintiff ostensibly did, that the Film portrays Heller as masking some scheme to embezzle money from the group.

The only reasonable interpretation of the challenged scenes is rather obvious.  The Film implies that Dr. Dre and Ice Cube were frustrated with Ruthless Records because they deserved to earn more money than Heller had offered them.  That frustration increased with N.W.A.'s popularity, as the rappers began realizing that they could achieve greater financial success without Heller.  Dr. Dre and Ice Cube's disillusionment, it is important to emphasize, was due not to some perception that Heller engaged in criminal conduct but to their opinion that N.W.A. got the short end of the stick in a business deal with Ruthless Records.  Both rappers, therefore, began looking for new opportunities with other recording companies.

To the extent Plaintiff contends that these implications are actionable, he is mistaken.  To begin with, the Court is not convinced that the Film's portrayal of Heller as a manager who puts the interests of his record company before those of the artist is defamatory.  A reasonable viewer should understand that it was Heller's job to negotiate the most favorable agreements for Ruthless Records.  Indeed, Plaintiff boasted in a separate state court action he brought against Ruthless Records that he was able to secure exceptionally favorable contracts with N.W.A.  *See* Complaint ¶¶ 23-24,

---

**CIVIL MINUTES—GENERAL**                                                                                              10

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-09631-MWF-KS                                   Date:  June 29, 2016
Title:      Gerald E. Heller -*v*- NBCUniversal, Inc., et al.

*Heller v. Comptown Records,* BC-172414  (Cal. Supr. Ct. June 6, 1997) ("*Comptown* Complaint").

In any event, all reasonable implications that can be drawn from the scenes transcribed above enjoy absolute protection under the First Amendment because they are not objective assertions of fact.  Indeed, the Film depicts a classic difference of opinion over whether N.W.A.'s contracts were "favorable" or "unfavorable," whether N.W.A. was being paid its "fair share" or not, and whether Heller was a "sleazy" manager or a good businessman.  While it is true that the producers of the Film took the side of N.W.A. in this controversy, any reasonable viewer watching the scenes would understand that the implications constitute opinion, not provable facts.

The Ninth Circuit's decision in *Partington* is illustrative.  The defendants there were accused of defaming an attorney who had unsuccessfully represented a criminal defendant during a high-profile trial.  *Partington*, 56 F.3d at 1149-50.  The implications at issue, which were derived from a book and a docudrama, faulted the plaintiff for failing to properly cross-examine a witness, present certain evidence, and act in his client's interests.  *Id.* at 1155-56.  The Ninth Circuit held that those implications were not actionable as a matter of law because they constituted the defendants' opinions regarding the plaintiff's professional competency.  *Id.* at 1155-57.  The defendants simply interpreted the facts available to them, the panel emphasized, and any reasonable viewer would understand that much.  *Id.*

Precisely the same reasoning applies here.  Just as "negative statements concerning a lawyer's performance during trial, even if made explicitly, are generally not actionable since they are not ordinarily susceptible of being proved true or false," *id.* at 1157, so too are statements regarding Plaintiff's professional performance as a manager of Ruthless Records.  The Film's alleged implication that Plaintiff is "sleazy" because he entered into "unfavorable" contracts with N.W.A. is as much of an opinion as the implications at issue in *Partington*.  The fact that the implication was made in a docudrama—a genre which "often rel[ies] heavily upon dramatic interpretations of events and dialogue filled with rhetorical flourishes in order to capture and maintain the interest of their audience," *id.* at 1555—only supports this conclusion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-09631-MWF-KS                                      Date:  June 29, 2016
Title:       Gerald E. Heller -v- NBCUniversal, Inc., et al.

Plaintiff challenged the Court's determination at the hearing, arguing that the Film did make a purely factual implication that Plaintiff stole N.W.A.'s money. While the Court disagrees that any reasonable viewer would draw the same implication, Plaintiff's claim would fail even if his interpretation were correct. Indeed, the alleged accusations made against Heller in the challenged scenes were also made in real life. Plaintiff admits that dispositive fact in his memoir, where he writes as follows:

> I didn't care what Dre or Cube or the D.O.C. said about me—even when they lied publicly that I had stolen money from them, ripped off, cheated them. . . . I've had to sit still and listen for two decades now to accusations from a pair of former friends and their advisors that I was a thief, a liar, and a cheat, and I was caught with my "hand in the cookie jar," that I had signed them to "draconian" contracts.

(Chieffo Decl., Ex. 2 ("Memoir") at 9, 292). Plaintiff further concedes that "Ruthless paid out seventy-five-thousand-dollar checks to each band member, contingent on them officially signing with the label. Everyone signed except Cube." (*Id.* at 138).

Defendants depicted this public controversy in the Film, dramatizing some details, excluding others (such as accusations of criminal theft), and implicitly expressing their opinion in favor of N.W.A. If the Court were to rule that a defamation claim based on such activity is actionable, then virtually any docudrama on a controversial topic could be defamatory. Controlling precedent and the First Amendment prohibit such a result. *See, e.g., Partington*, 56 F.3d at 1149-50 (holding that dramatic portrayal of true events and opinionated commentary thereon are shielded from liability as a matter of law); *Stilts v. Globe Int'l, Inc.*, 91 F.3d 144, 144 (6th Cir. 1996) (holding that an article describing a band accusing their manager of theft was protected under the First Amendment because the "'gist' of this article is not that [the manager] stole money from the [band], but that a controversy exists between the [band] and [the manager] regarding their business affairs . . . .").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-09631-MWF-KS                                  Date:  June 29, 2016
Title:     Gerald E. Heller -v- NBCUniversal, Inc., et al.

Accordingly, the Court concludes that the alleged implications of criminal and unethical conduct listed in the beginning of this section are not actionable as a matter of law.

### 2. Implications Drawn from the "Lobster Brunch" Scene

The SAC alleges implications similar to those already discussed from a scene depicting Heller and Eazy E enjoying a lobster brunch while Dr. Dre and Ice Cube are eating "Fatburger." (SAC ¶ 32). Ice Cube approaches Heller's table, takes a sip of Heller's champagne, and says, "Shit tastes pretty good. Someday, right?" Later in the Film, Ice Cube tells Dr. Dre, "What don't make sense is Eazy and Jerry eating lobster and we eating Fatburger." (*Id.*).

The scene is a dramatization of Ice Cube's admitted dissatisfaction with perceived financial inequality between him and Plaintiff. Indeed, Plaintiff admits in his memoir that Ice Cube constantly made such complaints during his time with N.W.A. (Memoir at 138). Plaintiff also admits that "restaurants are the life-blood of the music business" and that he often dined on lobster at expensive restaurants with clients. (*Id.* at 77). The Film simply portrayed these facts in "colorful [and] hyperbolic" terms that are "precisely the type[s] of rhetorical flourish[es] that the First Amendment protects." *Partington*, 56 F.3d at 1160. To the extent a reasonable viewer would interpret the scene as a comment on Ice Cube's dispute with Heller, that comment is mere opinion shielded from liability.

Accordingly, the implications Plaintiff draws from the "Lobster Brunch" scene cannot form the basis for his defamation claim.

### 3. Implication Drawn from the "Hospital Room" Scene

According to Plaintiff, the Film implies that "Heller abandoned Dr. Dre and D.O.C. after [a] car accident, but Suge Knight stepped in to take care of them." (SAC ¶ 32). The scene from which Plaintiff draws this implication, however, does not support his allegations.

---

**CIVIL MINUTES—GENERAL**                                                         13

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-09631-MWF-KS					Date:  June 29, 2016
Title:	Gerald E. Heller -v- NBCUniversal, Inc., et al.

The scene takes place in D.O.C.'s hospital room, where Knight asks Dr. Dre, "Where is Eazy and Jerry?"  After Dr. Dre responds that he does not know, Suge Knight asks, "What you know about Jerry?  What you think about him?"  Dr. Dre responds, "He alright I guess."  Dr. Dre then asks whether Knight's "people" could review Dr. Dre's contract with Ruthless Records.  Knight agrees.  (*Id.*; Chieffo Decl., Ex. 22).

No reasonable viewer could interpret this colloquy to imply that Plaintiff "abandoned" Dr. Dre and D.O.C or that Knight "stepped in to take care of them."  (*See* SAC ¶ 32).  Dr. Dre expresses no animosity toward Heller and simply requests Knight's thoughts on Dr. Dre's recording agreement.  There is nothing defamatory about these statements.

Accordingly, the implication Plaintiff draws from the "Hospital Room" scene is not actionable.

### 4.	Implications Drawn from Scenes Depicting Disputes between Heller and Eazy E

Plaintiff next focuses on two scenes in which Tomica Woods-Wright tells Eazy E that Heller took advantage of N.W.A. and Eazy E fires Heller for alleged mismanagement of Ruthless Records' finances.  (SAC ¶ 32).  But Plaintiff fails to recognize that those scenes do no more than depict decades-old public disputes between Plaintiff on one hand, and Eazy E and Woods-Wright on the other.  In 1997, Woods-Wright brought a state court action against Plaintiff, in which she alleged many details regarding Plaintiff's "abysmal [financial] management" of Ruthless Records.  Complaint ¶¶ 11-12, *Woods-Wright v. Heller*, BC-171257 (Cal. Supr. Ct. June 25, 1997).  Plaintiff denied these allegations in his own lawsuit against Ruthless Records, claiming that he was fired without cause.  *Comptown* Complaint ¶ 65.

The Film's dramatic portrayal of these public accusations of malfeasance is protected under the First Amendment.  This is so even if the Film could be interpreted to favor Eazy E's side in the controversy.  As the Ninth Circuit explained in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV-15-09631-MWF-KS | Date: June 29, 2016 |
| Title: Gerald E. Heller -v- NBCUniversal, Inc., et al. | |

*Partington*, "When, as here, an author writing about a controversial occurrence fairly describes the general events involved and offers his personal perspective about some of its ambiguities and disputed facts, his statements should generally be protected by the First Amendment." *Partington*, 56 F.3d at 1154. These controlling principles foreclose Plaintiff's allegations with respect to the challenged scenes.

Accordingly, the implications Plaintiff draws form the scenes depicting public controversies between Plaintiff and Eazy E are not actionable.

### 5. Implications Regarding Plaintiff Steering Ice Cube Away From Retaining an Attorney

The final two scenes challenged in the SAC portray Heller discouraging Ice Cube from hiring an attorney to review a proposed recording agreement with Ruthless Records. In the first scene, Heller states that lawyers "are paid to make trouble" and "create problems where none exists" after Ice Cube indicates that he wishes to retain an attorney to review Heller's proposed contract. In the second scene, Ice Cube tells an interviewer that Heller was "trying to get [him] to sign a contract without legal representation." (SAC ¶ 32). Plaintiff alleges that these statements are false and that he never steered Ice Cube away from hiring counsel. (*Id.* ¶ 33).

Defendants claim that no reasonable person could view the statements as defamatory. (Anti-SLAPP Motion at 17). The Film makes clear, Defendants argue, that Heller was not Ice Cube's agent and therefore owed no obligation to represent Ice Cube's interests in contract negotiations. (*Id.*) In light of that undisputed fact, Defendants contend that it could not have been defamatory to imply that Heller discouraged Ice Cube from hiring an attorney to negotiate against Ruthless Records. (*Id.*).

While a reasonable fact-finder could agree with Defendants, the Court cannot conclude as a matter of law that the challenged scenes are not defamatory. An average viewer would likely understand that the manager of Ruthless Records is expected to negotiate the best contract possible for his company. But viewers would not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-09631-MWF-KS                              Date:  June 29, 2016
Title:      Gerald E. Heller -v- NBCUniversal, Inc., et al.

necessarily interpret the manager's attempts to prevent an unsophisticated artist from hiring an attorney in a favorable or even neutral light.  Those attempts go beyond what is normally expected at the negotiation table, and agents who engage in such tactics may well carry a bad reputation in the industry.

Defendants' contentions to the contrary at the hearing were unpersuasive.  Defendants first argued that the implications of malfeasance were "substantially true" because N.W.A. members had, in fact, entered into agreements with Ruthless Records without legal representation.  But no evidence indicates that it was Plaintiff who dissuaded those individuals from hiring an attorney.  For all the Court knows, Plaintiff encouraged Ice Cube and others to obtain representation, but they simply chose not to do so.  The record therefore does not support Defendants' "substantial truth" theory.

Defendants next contended that the Film's depiction of Plaintiff could be defamatory only if the viewers accepted that the proposed contracts with Ruthless Records were unfair—something Plaintiff adamantly denies.  But the Film *does* imply that the contracts were one-sided and exploitative, which is precisely why Heller is portrayed as hoping to discourage Ice Cube from retaining an attorney.  Because a viewer could interpret such depictions as defamatory, Plaintiff's own view of the fairness of the deal is irrelevant.

Accordingly, the Court deems Plaintiff's defamation claim legally sufficient insofar as it is based on the Film's statements or implications that Plaintiff discouraged Ice Cube from hiring an attorney, which is an objective fact that either occurred or did not.

### 6. Conclusion

For the forgoing reasons, the Anti-SLAPP Motion and Rule 12(f) Motion to Strike are **GRANTED** as to all allegedly defamatory scenes listed in the SAC, except the two scenes stating or implying that Plaintiff discouraged Ice Cube from retaining an attorney.  The Court **RESERVES** its ruling as to those scenes for the reasons stated below.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-15-09631-MWF-KS                                   Date:  June 29, 2016
Title:     Gerald E. Heller -v- NBCUniversal, Inc., et al.

### B. Evidentiary Sufficiency of Plaintiff's Allegations

The next step of the analysis requires the Court to determine whether Plaintiff has presented sufficient evidence to support his defamation claim. *See Metabolife*, 264 F.3d at 840 ("[A] defendant's anti-SLAPP motion should be granted when . . . no evidence of sufficient substantiality exists to support a judgment for the plaintiff.") (internal quotation marks and citation omitted).  Defendants argue that Plaintiff has failed to do so because no evidence indicates that the alleged defamatory implications were made with actual malice.  (Anti-SLAPP Motion at 23-24).

Rather than presenting specific evidence of actual malice, Plaintiff requests the Court to delay ruling on the only two actionable scenes described above until after he conducts limited discovery and files a Supplemental Opposition.  (Discovery Motion at 6).  Because it is indeed plausible that Plaintiff could uncover proof of actual malice in discovery, the Court must grant Plaintiff's request.  The Ninth Circuit made that much clear in *Metabolife*, where it held that district courts have no discretion to grant anti-SLAPP motions due to the lack of supporting evidence before providing the plaintiff an opportunity to conduct discovery.  *See Metabolife*, 264 F.3d at 840 (stating that the discovery-limiting portions of the anti-SLAPP statute conflict with Rule 56 and are therefore inapplicable in federal court under the *Erie* doctrine).

Plaintiff's request for discovery is therefore **GRANTED**.  All discovery must be strictly limited to a single issue:  whether Defendants acted with actual malice when they stated or implied that Plaintiff discouraged Ice Cube from retaining an attorney during contract negotiations.  In conducing that limited discovery, the parties shall comply with the procedure outlined in the beginning of this Order.

IT IS SO ORDERED.